[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 152.]

NATIONAL CITY BANK, N.E., CROSS-APPELLEE, *v.* BEYER ET AL., APPELLEES

AND CROSS-APPELLANTS; STATE OF NEW JERSEY, APPELLANT.

[Cite as *Natl. City Bank v. Beyer*, 2000-Ohio-126.]

*Wills—Testamentary trust—Determination of testator's intent in distribution of trust corpus from testamentary trust—Probate court's judgment awarding trustee fees and expenses affirmed.*

(No. 98-2531—Submitted December 1, 1999—Decided June 21, 2000.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Huron County,

No. H-98-006.

———————————

{¶ 1} Donald G. Van Horn and Mildred R. Van Horn were husband and wife. They had a daughter, Virginia Beyer. On October 24, 1967, Donald Van Horn executed his last will and testament. In his will, Van Horn created a testamentary trust. National City Bank ("NCB") is the trustee.[1] The trust states that the trustees, in their sole discretion, can provide income from the trust to either his wife, Mildred Van Horn, his daughter, Virginia Beyer, or her children for support. Upon Mildred Van Horn's death, the trustees, in their sole discretion, can provide income from the trust to Virginia Beyer and/or her children for support. Item 5.2 C of Donald Van Horn's will provides:

"At the death of my daughter, Virginia, if she leaves lineal descendants surviving, then the assets of this trust estate shall be divided into as many equal trust shares as my said daughter has children then living, plus an equal share for the lineal descendants per stirpes of any child of my daughter, who may have died leaving lineal descendants surviving.

———

1. Akron National Bank & Trust Company was an original trustee. However, National City Bank became the trustee as successor to Akron National Bank & Trust Company.

"As to each trust share for the benefit of a lineal descendant of my daughter, Virginia, the Trustees shall pay to the beneficiary or beneficiaries thereof such amount of the income—and if the income is insufficient, from the principal of said trust share—as the Trustees, in their discretion deem necessary or proper to provide for or to help provide for the beneficiary's suitable support, maintenance, comfort and education. Any undistributed income shall at the end of each year be accumulated and added to the principal of the trust share from which it was derived.

"The assets of such trust share shall be distributed free from trust to the beneficiary thereof when he or she reaches the age of twenty-five (25) years. If such beneficiary dies before the assets of his or her trust share [have] been fully distributed to him or her, then the undistributed portion shall be distributed forthwith and free from trust to his or her issue, if any, but in default of any such issue, shall be distributed pro rata to the share of those, if any, who claim through the same parent as the deceased beneficiary, but in default of any such, then such share shall be added pro rata to the other trust shares, and if any of those trust shares have been distributed to the beneficiary or beneficiaries thereof, and the trust terminated, then distribution shall be made directly to the beneficiary or beneficiaries of the trust share that has been thus ended."

{¶ 2} Virginia Beyer had three children—Sophie, Katherine, and Elizabeth. On June 29, 1969, approximately two years after her father executed his will, Virginia Beyer died. At the time of Virginia Beyer's death, Sophie Beyer was five years old, Elizabeth Beyer was seven, and Katherine Beyer was nine. On February 27, 1976, Donald Van Horn died. On July 24, 1983, Katherine Beyer was committed to the Trenton Psychiatric Hospital in New Jersey. On June 2, 1990, Mildred Van Horn died. At the time of Mildred Van Horn's death, Sophie, Katherine, and Elizabeth Beyer had all reached the age of twenty-five. However, prior to any distribution from the trust, Katherine died, intestate, childless, and unmarried, on December 31, 1990.

**{¶ 3}** In 1992, the trustee, NCB, distributed a one-third share of the testamentary trust corpus to Sophie Beyer and a one-third share to Elizabeth Beyer pursuant to the terms of the trust. Thereafter, Sophie and Elizabeth Beyer tried to persuade NCB to divide Katherine Beyer's one-third share of the trust and to distribute it to them equally.[2]

**{¶ 4}** NCB declined to distribute Katherine Beyer's share to Sophie and Elizabeth Beyer. NCB was informed of a claim by the Trenton Psychiatric Hospital against Katherine Beyer's estate.[3] As a result, NCB apparently became aware that Kathrine Beyer's estate could be a beneficiary of Katherine Beyer's share of the trust. NCB claimed its hesitation to distribute Katherine Beyer's share was due to an ambiguity in the language in Item 5.2 of the Van Horn will. NCB asserted that Item 5.2 C of Van Horn's will was ambiguous as to whether the "language providing for the death of a beneficiary before distribution, only applies to beneficiaries who have not reached the age of twenty-five (25) years or if it applies to all distribution situations." In other words, NCB contended that the intent of the language of Item 5.2 C could be read to divest Katherine Beyer of her share of the trust only if she died before the age of twenty-five. Alternatively, NCB believed that Item 5.2 C could be interpreted to mean that Katherine Beyer was to be divested of her share of the trust if she died before her share was distributed to her, regardless of her age. NCB believed that the "correct" interpretation of the trust would

---

2. From the record it appears that Elizabeth Beyer was not represented in this action by counsel until 1997. Yet, it is asserted that Elizabeth Beyer also sought part of Katherine Beyer's share of the trust. As Sophie Beyer's sister, Elizabeth Beyer would be treated the same as Sophie Beyer for purposes of distribution of Katherine Beyer's share of the trust. Thus, for purposes of reviewing the history of this case, we include Elizabeth Beyer's claim together with Sophie Beyer's claim.

3. Katherine Beyer had been confined to the Trenton Psychiatric Hospital since July 24, 1983. The County Adjuster from Somerset County New Jersey initiated an action to recoup the money New Jersey was expending in caring for Katherine Beyer while she was in the hospital. On December 20, 1984, the Superior Court of New Jersey, Somerset County, issued a support order holding Katherine Beyer's estate liable for support provided to her by New Jersey.

determine whether NCB should distribute Katherine Beyer's share of the trust to Sophie and Elizabeth Beyer or to Katherine Beyer's estate.

{¶ 5} In 1991, by letter through her counsel, Shelley M. Draper, Sophie Beyer requested that NCB distribute one-half of Katherine Beyer's share of the trust assets to Sophie Beyer pursuant to language in Item 5.2 C of the Van Horn will. Subsequently, Sophie Beyer acquired new counsel, Barbara Schneider. In 1993, Sophie Beyer yet again retained new counsel, Karen Sinchak, who wrote a letter to NCB, requesting once more that NCB distribute Katherine Beyer's share of the Van Horn trust to Sophie Beyer. Subsequently, Sophie Beyer changed counsel again. In 1993, her new counsel, Daniel G. LaPorte, met with an NCB representative several times in an attempt to negotiate a settlement. In 1994, LaPorte informed NCB that he would file a declaratory action, on behalf of Sophie Beyer, in the Court of Common Pleas of Huron County, Probate Division, seeking instruction as to the proper distribution of Katherine Beyer's share of the Van Horn trust. The action was never filed.

{¶ 6} On November 7, 1996, NCB filed a declaratory action in the Court of Common Pleas of Huron County, Probate Division. NCB's complaint included, among others, the following defendants—the state of New Jersey, Sophie Beyer, and Elizabeth Beyer. Sophie and Elizabeth Beyer filed an answer and three counterclaims.[4] The first asked the court to construe the trust in their favor. The second sought indemnity equal to the amount of the trust assets against NCB in the event that the court construed the trust language in favor of the estate of Katherine Beyer and New Jersey. The third sought a refund of trustee fees and expenses for administration of the trust by NCB subsequent to December 31, 1990, on the basis that NCB had failed to distribute the trust proceeds within a reasonable time.

---

4. Sophie and Elizabeth Beyer filed separate answers, which contained identical pleadings.

**{¶ 7}** On January 7, 1997, New Jersey filed an answer and a counterclaim asking the court to construe the trust language in favor of the estate of Kathrine Beyer. On March 27, 1997, the state of New Jersey, through the New Jersey Attorney General, was appointed administrator of Katherine Beyer's estate. On April 14, 1997, Sophie Beyer moved the court to dismiss New Jersey as a party for lack of standing.

**{¶ 8}** Sophie and Elizabeth Beyer, and New Jersey all filed motions for summary judgment. NCB filed a motion for partial summary judgment against Sophie and Elizabeth Beyer's counterclaims.

**{¶ 9}** As a threshold matter, the probate court held that New Jersey had standing. The probate court also interpreted Item 5.2 C of Van Horn's will to mean that Katherine Beyer's death prior to the distribution of her share of the trust did not divest her estate of the right to her share of the trust. Thus, the probate court held that Katherine Beyer's trust share should be distributed to her estate subject to administration by the state of New Jersey. After a hearing, the probate court also granted NCB trustee fees and expenses earned by NCB after December 31, 1990.

**{¶ 10}** Elizabeth and Sophie Beyer appealed. The court of appeals reversed the judgment interpreting the trust in favor of New Jersey and remanded the cause to the probate court to distribute Katherine Beyer's share of the trust to Sophie and Elizabeth Beyer. Although the issue of standing was made moot by its first holding, the court of appeals also found that New Jersey had no standing because, *inter alia*, "no claim was ever filed against New Jersey in its capacity as representative of the estate of Katherine Beyer." Finally, the court of appeals also affirmed the probate court's judgment that awarded NCB its trustee fees and expenses.

**{¶ 11}** This cause is now before this court pursuant to the allowance of a discretionary appeal and cross-appeal.

———————————

*Day, Ketterer, Raley, Wright & Rybolt, Ltd.*, *John A. Murphy, Jr.* and *Todd A. Harpst*, for cross-appellee.

*Mary Clare Cullen*, for appellees and cross-appellants.

*White, Getgey & Meyer Co., L.P.A., David P. Kamp* and *Barbara F. Florez,* for appellant.

_____

**LUNDBERG STRATTON, J.**

**{¶ 12}** There are three issues for our consideration. The first issue is whether Katherine Beyer's one-third share of Donald Van Horn's trust fund should be distributed to her estate, as administered by the state of New Jersey, or to her sisters Sophie and Elizabeth Beyer. To answer this question we must ascertain how Donald Van Horn intended the trust corpus from his testamentary trust to be distributed. The second issue is whether the state of New Jersey had standing to challenge distribution of Katherine Beyer's share of the trust. The third issue is whether the trustee fees and expenses awarded to NCB for administering the trust subsequent to December 31, 1990, were properly awarded by the probate court.

**{¶ 13}** Construing the terms of the trust pursuant to Van Horn's intent, we find that Katherine Beyer's share of the trust should pass to Sophie and Elizabeth Beyer equally. This makes the issue of whether New Jersey has standing moot. We also find that the appellate court did not err in affirming the probate court's judgment that awarded NCB trustee fees and expenses for administration of the trust subsequent to December 31, 1990. Thus, we affirm the judgment of the court of appeals.

Katherine Beyer's Share of the Trust

**{¶ 14}** The fundamental rule in the construction of a trust is to ascertain the intent of the settlor. *Domo v. McCarthy* (1993), 66 Ohio St.3d 312, 314, 612 N.E.2d 706, 708. In determining the intent of a testamentary trust, we must look to the

testator's intent as evidenced in his or her will. This court has used the following guidelines to interpret a testamentary trust:

" '1. In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator.

" '2. Such intention must be ascertained from the words contained in the will.

" '3. The words contained in the will, if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appear[s] from the context that they were used by the testator in some secondary sense.

" '4. All parts of the will must be construed together, and effect, if possible, given to every word contained in it.' " *Ohio Natl. Bank of Columbus v. Adair* (1978), 54 Ohio St.2d 26, 30, 8 O.O.3d 15, 17, 374 N.E.2d 415, 417-418, quoting *Townsend's Executors v. Townsend* (1874), 25 Ohio St. 477, syllabus.

**{¶ 15}** We find that Item 5.2 C of Van Horn's will contains language that is instructive in determining how Katherine Beyer's share of the trust should be distributed. Item 5.2 C states:

"At the death of my daughter, Virginia, if she leaves lineal descendants surviving, then the assets of this trust estate shall be divided into as many equal trust shares as my said daughter has children then living, plus an equal share for the lineal descendants per stirpes of any child of my daughter, who may have died leaving lineal descendants surviving.

" * * *

"The assets of such trust share shall be distributed free from trust to the beneficiary thereof when he or she reaches the age of twenty-five (25) years. *If such beneficiary dies before the assets* of his or her trust *share* has [*sic*] been *fully distributed* to him or her, then the *undistributed portion* shall be *distributed* forthwith and free from trust to his or her *issue*, if any, but *in default of any such issue*, shall be *distributed pro rata* to the shares of *those*, if any, *who claim through*

*the same parent as the deceased beneficiary*, but in default of any such, then such share shall be added pro rata to the other trust shares, and if any of those trust shares have been distributed to the beneficiary or beneficiaries thereof, and the trust terminated, then distribution shall be made directly to the beneficiary or beneficiaries of the trust share that has been thus ended." (Emphasis added.)

**{¶ 16}** We find that the contingency requiring lineal descendants to reach the age of twenty-five evidences intent by Van Horn that such contingency is a condition precedent to the vesting of an interest in the trust fund in those descendants. The interest would then become possessory once all prior interests have terminated.

**{¶ 17}** However, a vested interest may be subject to divestment upon the occurrence of a named event. See *Papiernik v. Papiernik* (1989), 45 Ohio St.3d 337, 343, 544 N.E.2d 664, 670. We believe that was precisely Van Horn's intent in using the following language found in Item 5.2 C of his will: "[*I*]*f* such *beneficiary dies before the assets* of his or her trust share has [*sic*] been *fully distributed* to him or her, *then* the *undistributed portion* shall be *distributed* forthwith and free from trust to his or her issue, if any, but in default of any such issue, shall be distributed *pro rata* to the *shares of those*, if any, *who claim through the same parent as the deceased beneficiary*, but in default of any such, then such share shall be added pro rata to the other trust shares * * * ." (Emphasis added.)

**{¶ 18}** We find that this language indicates that a lineal descendant's right to the proceeds from the trust fund is contingent upon the descendant's *surviving distribution* of the trust share to him or her. In other words, under this trust, Virginia Beyer's lineal descendants have a vested interest in the trust corpus if they reach the age of twenty-five, but are subject to divestment if they die before the proceeds from the trust are distributed to them.

**{¶ 19}** We also find that the trust language subsequent to the divesting language evidences an intent by Van Horn that, should a descendant who is vested

die before his or her interest is *fully distributed* to him or her, that share would gift over to other family members. A gift-over provision to relatives indicates an intent by the testator that property from a trust remain in the family. See *Casey v. Gallagher* (1967), 11 Ohio St.2d 42, 40 O.O.2d 55, 227 N.E.2d 801.

{¶ 20} We also find that Item 6 of Van Horn's will provides insight into his intent in distributing trust assets. Item 6 is a spendthrift clause, which provides:

"No principal or income payable or to become payable under any trust created by this will shall be subject to * * * attachment by any creditor * * * . If * * * either principal or income would * * * become payable to others than the beneficiary thereof, then the trust interest of such beneficiary shall terminate    * * * ."

{¶ 21} This language provides that beneficiaries *cannot alienate* the *corpus* of the trust *prior* to the *actual receipt* of the trust share to the beneficiary. Any attempt to do so would terminate that beneficiary's interest in his or her trust share. Thus, a spendthrift clause also indicates an intent to have trust proceeds stay within those named as beneficiaries.[5] All of the named beneficiaries in Van Horn's trust are family members or their descendants.

{¶ 22} In interpreting a testamentary trust, we must look to all the parts of the will. *Adair*, 54 Ohio St.2d at 30, 8 O.O.3d at 17, 374 N.E.2d at 418. Together, Items 5 and 6 of the Van Horn will evidence an intent by Van Horn to keep the trust corpus from being alienated outside the bloodlines of his family or their descendants. Further, the specific language in Item 5.2 C of Van Horn's will divests a beneficiary of his or her share of the trust should he or she die before the share is *fully distributed* to him or her, and directs how that share is gifted over to his or her

---

5. We note that where a parent attempts to utilize a spendthrift clause to preclude a creditor from reaching his or her child's inheritance, such a spendthrift clause might be against public policy if it interferes with a parent's obligation for his or her child's support. However, that is not the situation in this case. Katherine Beyer is Donald Van Horn's granddaughter. Thus, Van Horn had no obligation to support her.

other family members. Thus, we affirm the court of appeals' judgment that, in creating the testamentary trust, Van Horn's intent was to keep the corpus from being alienated outside the bloodlines of the family members or their descendants.

{¶ 23} Prior to Mildred Van Horn's death, Sophie, Elizabeth, and Katherine Beyer all had reached the age of twenty-five. Thus, each had acquired a vested interest in the trust corpus because each had a present fixed right to future enjoyment of the trust assets. See *Tax Comm. v. Oswald* (1923), 109 Ohio St. 36, 52, 141 N.E. 678, 682. When Mildred Van Horn died on June 2, 1990, Sophie, Elizabeth, and Katherine Beyer's respective vested interests became possessory. However, Katherine Beyer's share of the trust had not been distributed to her before she died on December 31, 1990. Therefore, pursuant to the language in Item 5.2 C of the will, she was divested of her share when she died before her share was distributed to her. If Katherine Beyer had left an heir, then the language in Item 5.2 C would have directed her share to be distributed to her children. However, because Katherine Beyer died childless, Item 5.2 C directed that Katherine Beyer's share of the testamentary trust be distributed pro rata to Sophie and Elizabeth Beyer.

{¶ 24} This distribution also comports with the intent of the spendthrift clause. Because Katherine Beyer's estate is subject to the lien of the Trenton Psychiatric Hospital, distribution of Katherine Beyer's share of the trust to her estate would run afoul of Van Horn's intent to keep the trust assets "in the family," as evidenced by the spendthrift clause in the trust.

{¶ 25} Therefore, we affirm the court of appeals' judgment pertaining to the distribution of Katherine Beyer's share of the trust. Katherine Beyer's share of the trust should be distributed to Sophie and Elizabeth Beyer equally.

Trustee Fees and Expenses

{¶ 26} In answering NCB's complaint, Sophie and Elizabeth Beyer asserted a counterclaim seeking "a refund of all Trustee fees * * * and other trust expenses taken by Plaintiff [NCB]." NCB moved for partial summary judgment against this

counterclaim. Following a hearing, the probate court by entry on March 10, 1998, granted NCB's motion for partial summary judgment against Sophie and Elizabeth Beyer's counterclaim for "Trustee Fees and Expenses." The appellate court affirmed the award of trustee fees and expenses.

{¶ 27} On cross-appeal to this court, Sophie and Elizabeth Beyer assert that they should not have to pay NCB trustee fees and expenses after December 31, 1990, because of NCB's unreasonable delay in distributing the proceeds of the Van Horn trust.

{¶ 28} Sup.R. 74 addresses trustee compensation. Subsection (E) states:

"The *court may* deny or reduce compensation if * * * after hearing, the court finds that the trustee *has not faithfully discharged the duties of the office*." (Emphasis added.)

"[U]sage of the term '*may*' is generally construed to render optional, permissive, or *discretionary* the provision in which it is embodied." (Emphasis added.) *State ex rel. Niles v. Bernard* (1978), 53 Ohio St.2d 31, 34, 7 O.O.3d 119, 120-121, 372 N.E.2d 339, 341. Thus, pursuant to the language in Sup.R. 74(E), a court has discretion whether to reduce or deny a trustee compensation. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149.

{¶ 29} Sophie and Elizabeth Beyer allege that NCB should not be awarded trustee fees and expenses because it failed to distribute the trust assets within a reasonable time. The record indicates that a hearing to determine whether to award NCB trustee fees and expenses was scheduled for February 24, 1998. On March 10, 1998, the probate court awarded NCB trustee fees and expenses by entry. The probate court did not issue a decision on the issue although the entry that granted NCB summary judgment did refer to "the facts presented." However, either there was no transcript made of this hearing, or it was not included in the record certified

to this court. Thus, we must presume regularity of the probate court's judgment awarding NCB trustee fees and expenses. *Wells v. Spirit Fabricating, Ltd.* (1996), 113 Ohio App.3d 282, 288-289, 680 N.E.2d 1046, 1050 (Absent relevant evidence, an appellate court must presume the regularity of the trial court's proceedings and judgment.).

{¶ 30} Notwithstanding our presumption of the regularity of the probate court's proceedings and judgment awarding NCB trustee fees and expenses, we also find that, pursuant to the arguments made and the evidence that was certified in the record, the probate court did not abuse its discretion. Arguably, there is evidence to support a finding that NCB was reasonable in its actions, just as there is some evidence to support a finding that NCB was not reasonable in its actions. Sophie and Elizabeth Beyer have challenged the award of fees and expenses to NCB, but have failed to provide the court with a transcript of the proceedings of the hearing to enable this court to evaluate the evidence upon which the probate court based its judgment. The evidence that does exist outside the hearing and is before this court is of such a nature and quantity to be insufficient to find that the probate court's judgment awarding trustee fees and expenses to NCB was unreasonable, arbitrary, or unconscionable. Accordingly, we affirm the judgment that awarded trustee fees and expenses to NCB.

Conclusion

{¶ 31} We find that (1) it was Donald Van Horn's intent that Katherine Beyer's share of the trust fund should pass to Sophie and Elizabeth Beyer in equal shares, (2) the issue of New Jersey's standing is moot, and (3) NCB was entitled to trustee fees and expenses.

{¶ 32} Thus, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., F.E. SWEENEY and PFEIFER, JJ., concur.

CARR, J., concurs in part and dissents in part.

Douglas, J., dissents.

Cook, J., not participating.

Donna J. Carr, J., of the Ninth Appellate District, sitting for Resnick, J.

_____

**Carr, J., concurring in part and dissenting in part.**

{¶ 33} Because the majority's disposition of the issue of trustee fees and expenses recharacterizes the nature of the proceedings below, contradicts this court's holding in *Carrabine Constr. Co. v. Chrysler Realty Corp.* (1986), 25 Ohio St.3d 222, 25 OBR 283, 495 N.E.2d 952, and applies the wrong standard of review for summary judgment proceedings, I must respectfully dissent in regard to this issue.

{¶ 34} The Beyers filed a counterclaim against NCB for breach of fiduciary duty, requesting a refund of all trustee fees and expenses paid since December 31, 1990. The majority correctly indicates that NCB filed a motion for partial summary judgment on this counterclaim. The probate court did not rule on this summary judgment motion in its January 30, 1998 judgment entry. Rather, on January 30, 1998, the probate court issued an order in which it set NCB's motion for partial summary judgment for a February 24, 1998 hearing. (See Appendix I. \\Webserver\ftp\Pubs\Opinions\2000\982531 APPENDIX I.doc.) The probate court proceeded to hold this hearing, and in a March 10, 1998 entry, the court stated that the "Motion for Partial Summary Judgment * * * is hereby granted." (See Appendix II. \\Webserver\ftp\Pubs\Opinions\2000\982531 Appendix II.doc.)

{¶ 35} In this instance, then, we are left with a situation in which the probate court thought that it was holding a summary judgment hearing and thought that it was entering a grant of partial summary judgment. The majority, however, has altered the character of the February 24, 1998 hearing. Instead of attributing to the probate court an awareness of what it was doing, the majority states that the hearing in question was not in actuality a summary judgment proceeding but was, instead, a hearing pursuant to Sup.R. 74(E). Even assuming *arguendo* that the proceeding should have been conducted under Sup.R. 74(E), the record indicates that the probate court thought it was conducting summary judgment

proceedings, resulting in what the probate court intended to be a grant of partial summary judgment on the Beyers' counterclaim for breach of fiduciary duty.

{¶ 36} The majority erroneously concludes that because the record does not include a transcript of the February 24, 1998 hearing, the court must assume the regularity of the probate court's ruling on NCB's summary judgment motion and affirm the decision. Although this rationale may indeed control if the February 24, 1998 proceedings were conducted under Sup.R. 74(E), this rule cannot be applied to the summary judgment hearing that took place on that day.

{¶ 37} In *Carrabine*, this court held that "[a] trial court is precluded from considering supplemental oral testimony introduced for the first time at a hearing on a motion for summary judgment under Civ.R. 56." *Id.* at syllabus. Therefore, even if the transcript of the February 24, 1998 hearing were included in the record, this court would ignore any evidence not properly present in the record, just as the probate court and the court of appeals below could only consider that evidence that was properly before the probate court pursuant to Civ.R. 56(C). In recharacterizing the February 24, 1998 proceedings, the majority has inadvertently altered not only the nature of what appears to have transpired below, but also the nature of this court's review. Instead of addressing this issue on the merits, or lack thereof, of the evidence supporting and opposing summary judgment, the decision today denies the parties the *de novo* review to which they are entitled in favor of a presumed regularity.

{¶ 38} The majority also states that "[n]otwithstanding our presumption of the regularity of the probate court's proceedings and judgment awarding NCB trustee fees and expenses, we also find that, pursuant to the arguments made and the evidence that was certified in the record, the probate court did not abuse its discretion." There is no discretion in the review of a motion for summary judgment; by its very definition, summary judgment may only be awarded in instances in which a party is entitled to judgment as a matter of law. This court has previously explained that, pursuant to Civ.R. 56(C), summary judgment is proper only if "(1) [n]o genuine issue as to any material fact remains to be

litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to [the nonmoving] party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274. The holding of this court today departs from this clear standard.

{¶ 39} Given the foregoing considerations, I find especially notable the majority's statement that "[a]rguably, there is evidence to support a finding that NCB was reasonable in its actions, just as there is some evidence to support a finding that NCB was not reasonable in its actions." This is precisely the reason why I would hold that there is a genuine issue of material fact with respect to the Beyers' counterclaim and would reverse on this issue.

————————————

APPENDIX I

THE COURT OF COMMON PLEAS
PROBATE DIVISION
HURON COUNTY, OHIO

FILED
HURON CO. OHIO

JAN 3 0 1998

PROBATE COURT
THOMAS E. HEYDINGER, JUDGE

NATIONAL CITY BANK, NE
        Plaintiff

-VS-

SOPHIE BEYER, ETAL
        Defendants

CASE# 96-12824
DOCKET # 28
PAGE # 249

JUDGMENT ENTRY

The Court upon consideration of the Motions and documents filed and the facts presented the Court hereby orders the following:

1.      The Motion for Joinder and in the alternative to Appoint a Co-Trustee is denied and current Trustee National City Bank, NE shall serve as the sole remaining Trustee as permitted by Ohio Revised Code Section 2109.07.
2.      The National City Bank, NE Motion To Strike the Affidavit of Daniel G. LaPorte is not well founded and therefore denied.
3.      The Sophie M. Beyer and Elizabeth O. Beyer Motion for Separate Trial of Defendant's second Counterclaim against National City Bank, NE is denied.
4.      The National City Bank, NE Request to pay fees for administering the Donald G. Van Horn Trust is scheduled for hearing on February 24, 1998 at 9:00a.m.
5.      The Cross-Motion for Summary Judgment for the Defendant State of New Jersey is granted. The Court finds no material issue of fact and that the State of New Jersey is entitled to Summary Judgment as a matter of law. The Court further determines that the Donald G. Van Horn Trust constructively terminated at the death of Mildred R. Van Horn on June 2, 1990 when all remaining beneficiaries were twenty-five (25) years of age pursuant to the testator's instructions in paragraph 5.2 C of his Last Will and Testament. The Court further determines that the Katherine Beyer trust share shall be distributed to the State of New Jersey as the administrator of the Katherine Beyer Estate as appointed March 27, 1997.
6.      The National City Bank, NE Motion for Partial Summary Judgment against the Sophie M. Beyer and Elizabeth O. Beyer Second Counterclaim for Indemnity is granted due to the failure to state a judiciable Cause of Action.
7.      The National City Bank, NE Motion for Partial Summary Judgment Against the Sophie M. Beyer and Elizabeth O. Beyer Third Counterclaim For

January Term, 2000

APPENDIX I -- continued

Trustee Fees and Expenses incurred after December 31,1990 is scheduled for a hearing February 24, 1998 at 9:00 a.m.

8.   It is further ordered that this judgment is a final judgment and an appealable order pursuant to Civil Rule 54(B) because there is no justifiable reason for delay of a possible appeal of this judgment until other claims and issues are determined.

January 30, 1998

SEAL

Thomas E. Heydinger, Probate Judge

cc: John Murphy, Attorney for NCB
    David P. Kamp, Attorney for State of New Jersey
    Daniel G. LaPorte, Attorney for Sophie and Elizabeth Beyer
    John Beyer

APPENDIX II

THE COURT OF COMMON PLEAS
PROBATE DIVISION
HURON COUNTY, OHIO



FILED
HURON CO. OHIO

MAR 1 0 1998

PROBATE COURT
THOMAS E. HEYDINGER JUDGE

NATIONAL CITY BANK, NE
        Plaintiff

-VS-

SOPHIE BEYER, ETAL
        Defendants

CASE# 96-12824
DOCKET # 28
PAGE # 249

**JUDGMENT ENTRY**

The Court upon consideration of the Motions and documents filed and the facts presented the Court hereby orders the following:

1.    The Motion to Authorize Attorney Fees for James Contini II, attorney for Trustee, National City Bank, Northeast is granted.
2.    The Sophie M. Beyer and Elizabeth O. Beyer Motion For Stay of Execution is granted.
3.    The National City Bank, Ne Motion for Partial Summary Judgment Against the Sophie M. Beyer and Elizabeth Beyer Third Counterclaim For Trustee Fees and Expenses after December 31, 1990 is hereby granted.
4.    The Motion of Defendants Beyer under Civil Rule 60(A) to amend the January 30, 1998 Judgment Entry to include a ruling on the Beyer Motion for Summary Judgment is granted. The Sophie M. Meyer and Elizabeth O. Beyer Summary Judgment is denied.

March 10, 1998
    SEAL

Thomas E. Heydinger Probate Judge

cc;  John A. Murphy
     David P. Kamp
     Daniel G. LaPorte