OPINION *Page 2 
{¶ 1} Appellant, Nathaniel A. Dumas, was convicted of possession of cocaine, a violation of R.C. 2925.11, a firearm specification in violation of R.C. 2941.141, and having a weapon while under disability in violation of R.C. 2923.13, following his jury trial in the Mahoning County Court of Common Pleas. The charges stem from a traffic stop that occurred on March 8, 2003, after two Youngstown Police Officers witnessed Appellant run a stop sign. He failed to cooperate with the police, and a search of his vehicle revealed a gun, suspected crack cocaine, and marijuana.
 {¶ 2} Appellant timely raises four assignments of error on appeal. He alleges that statements he made to the police should have been suppressed since he had not been informed of his Miranda rights; that the trial court erred in allowing the state to present two witnesses who were not revealed to the defense in advance of trial; and that certain evidence should not have been admitted at trial since the state's chain of custody was broken. The record reflects that statements made by Appellant to the police before he was read his rights were not made in response to any police questioning, and thus did not necessitateMiranda warning. Further, the state's untimely disclosure of trial witnesses was neither intentional nor prejudicial to Appellant's case, and the state's general mishandling of the evidence was before the jury for its consideration and did not negatively impact his case. Accordingly, his arguments on appeal lack merit and are overruled.
 FACTS AND PROCEDURAL HISTORY {¶ 3} On the evening of March 8, 2003, two Youngstown Police Department (YPD) Officers were on routine patrol when they witnessed a vehicle run a stop sign. *Page 3 
The driver was later identified as Appellant. After he ran a second stop sign, the officers initiated a stop. YPD Officer Tickerhoof approached the passenger side of the vehicle and asked for his driver's license, registration, and proof of insurance. Appellant became argumentative and did not comply. YPD Officer Butler approached the vehicle to assist. Tickerhoof opened the driver's side door and asked Appellant to exit the vehicle. Appellant reached toward the ignition, and in response, Tickerhoof grabbed Appellant's arm in an effort to remove him from the car. Butler saw a handgun lying between the driver's seat and the car door. He tried to alert Tickerhoof of the presence of the weapon. Appellant struggled with Tickerhoof, and Tickerhoof eventually had to use pepper spray to secure him. Appellant was placed in the back of the cruiser, was decontaminated from the pepper spray, and later announced to the officers that he needed the gun for protection. He also said something to the effect that the officers could keep the gun and the drugs and they could, "call it even." (Tr., pp. 209-210, 215-219, 230-231.)
 {¶ 4} Officer Butler logged in the items found on Appellant and in his vehicle on the night in question to the police evidence locker. He recorded they had obtained a pistol, a magazine or clip from the weapon, bullets, baggies of suspected crack cocaine and marijuana, and one pager.
 {¶ 5} Appellant was subsequently charged with possession of cocaine, a firearm specification, and having a weapon while under disability based on a prior drug conviction. On April 9, 2004, his counsel filed a motion with the trial court seeking to suppress the statements he made to the YPD officers. The motion was overruled. Appellant was convicted on possession of cocaine, a felony of the third *Page 4 
degree in violation of R.C. 2925.11(A)(C)(4)(c) with a firearm specification in violation of R.C. 2941.141(A), and having a weapon while under a disability in violation of former R.C. 2923.13(A)(3) after his February 6, 2006, jury trial. He was sentenced to three years of incarceration on the possession conviction consecutive to one year on the firearm specification and a consecutive six months on the charge of having a weapon under a disability. He was also ordered to pay a $5,000 fine and to serve three years of post release control.
 {¶ 6} His first assignment of error addresses the trial court's alleged failure to grant his motion to suppress:
 {¶ 7} "The trial court should have granted Dumas's motion to suppress evidence. Dumas was not Mirandized after he was taken into custody."
 {¶ 8} Appellant's motion to suppress took issue, in part, with the use of statements he made to police while in custody but prior to being read his Miranda rights. According to trial testimony, Appellant evidently told the arresting officers that he carried the handgun found in his vehicle for protection and that they could keep the gun if they let him go. He made these statements while in custody but before he was advised of his rights. Thus, he claims that his statements should have been suppressed.
 {¶ 9} Appellant's motion to suppress was heard by the trial court on August 12, 2004. The trial court denied the motion, holding in part,
 {¶ 10} "No questions were asked of the [Appellant] other than his name, operator's license and insurance information. *Page 5 
 {¶ 11} "[Appellant's] Motion to Suppress is OVERRULED." (August 13, 2004, Judgment Entry.)
 {¶ 12} Appellant sought a copy of the suppression hearing transcript at the state's expense. His request was granted. (August 17, 2004, Judgment Entry.) However, a copy of this transcript was never filed with the trial court or this Court, and as such, is not available for our review.
 {¶ 13} Appellate review of a ruling on a motion to suppress involves mixed questions of law and fact. "`In a hearing on a motion to suppress evidence, the trial court assumes the role of the trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.'" State v. Hopfer (1996), 112 Ohio App.3d 521,548, 679 N.E.2d 321, quoting State v. Venham (1994), 96 Ohio App.3d 649,653, 645 N.E.2d 831. Thus, we must accept the trial court's findings as true if they are supported by competent and credible evidence. State v.Winand (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9, citingTallmadge v. McCoy (1994), 96 Ohio App.3d 604, 608, 645 N.E.2d 802. Thereafter, an appellate court must independently determine whether the facts satisfy the applicable legal standard. State v. Williams (1993),86 Ohio App.3d 37, 41, 619 N.E.2d 1141.
 {¶ 14} It is axiomatic that an appellant has the duty to provide the reviewing court with the record necessary to support his arguments on appeal. Natl. City Bank v. Beyer (2000), 89 Ohio St.3d 152, 160,729 N.E.2d 711; State v. Johnson, 9th Dist. No. 02CA008193, 2003-Ohio-6814, at ¶ 8; App.R. 9(B). Further, "[w]hen a defendant fails to provide a complete and proper transcript, a reviewing court will presume regularity of the proceedings in the trial court[.]" Johnson at ¶ 9. In light of the fact *Page 6 
that Appellant has failed to provide a transcript of the suppression hearing for our review, we must presume the regularity of the trial court's proceedings. Id.
 {¶ 15} Notwithstanding Appellant's failure, in their briefs on appeal both parties ignore it, and instead argue the merits of the motion to suppress based on the evidence presented at the jury trial.
 {¶ 16} YPD Officers Tickerhoof and Butler testified that Appellant's statements about the gun were made while Appellant was in the back of the police car. They claimed the statements were voluntary and not made in response to any questions by the officers. Appellant had only been asked basic identifying questions, i.e., his name and address. (Tr., pp. 230-231, 288, 307, 309.) In contrast, Appellant completely denied making the statements regarding the gun at trial. (Tr., p. 572.)
 {¶ 17} A suspect must be in custody and subject to interrogation before police are required to give Miranda warnings. State v. Gumm
(1995), 73 Ohio St.3d 413, 429, 653 N.E.2d 253, citing Miranda v.Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602. A suspect must be informed of his right to remain silent, that his statements may be used against him in a court of law, that he has the right to an attorney, and that if he cannot afford an attorney, one will be appointed on his behalf prior to questioning. State v. Taylor (Mar. 23, 2001), 11th Dist. No. 99-P-0071, 7. If the state cannot prove that the suspect was aware of these procedural safeguards, any statements made by the suspect as a result of a custodial interrogation may not be used against him.State v. Hayes (Sept. 30, 1999), 11th Dist. No. 97-A-0067, 32-33.
 {¶ 18} Nonetheless, a law-enforcement officer's failure to giveMiranda warnings does not mandate the, "suppression of the physical fruits of the suspect's *Page 7 
unwarned but voluntary statements." State v. Coston, 10th Dist. No. 05AP-905, 2006-Ohio-3961, ¶ 16, quoting United States v. Patane (2004),542 U.S. 630, 633-634, 124 S.Ct. 2620. The Miranda requirements do not affect the admission of volunteered statements made without police coercion or inducement. State v. Tucker (1998), 81 Ohio St.3d 431, 435,692 N.E.2d 171. Instead, a defendant's voluntary and unprovoked statements to police while under arrest and being transported to jail do not fall under the Miranda protections. State v. Williams (June 1, 1993), 12th Dist. No. CA92-07-133, 4.
 {¶ 19} The Ohio Supreme Court in State v. Farris, 109 Ohio St.3d 519,2006-Ohio-3255, 849 N.E.2d 985, concluded that, based on the facts of that case, the defendant's statements should have been suppressed. The statements were made while the defendant was in custody prior to the reading of his rights and were made in response to police questioning. Id. at ¶ 30. The officer in Farris specifically asked about the odor of marijuana detected on the defendant and whether the defendant possessed any drugs or paraphernalia. Because of this questioning, his response was inadmissible, since it was made during a custodial interrogation without the presentment of his Miranda rights.
 {¶ 20} Turning to the matter before us, a review of the trial testimony reveals that Appellant made the statements he sought to suppress while he was in police custody but, importantly, not in response to any form of interrogation. The officers testified that his statements were voluntary and were not made in response to any police questioning. Appellant denied making the statements altogether. Assuming that this testimony was the same as that presented in the motion to suppress, the trial *Page 8 
court apparently resolved the credibility issue in favor of the officers. Based on the record before us and especially in light of the conspicuous absence of a transcript of the suppression hearing, the trial court committed no error. Accordingly, this assignment of error lacks merit and is overruled.
 {¶ 21} The state further argues that even if there was aMiranda violation in this case, the officers' testimony established that the handgun was in plain view following a valid traffic stop. Under the plain view doctrine, the police may confiscate an item without a warrant if the initial police inquiry or intrusion leading to the discovery of the item was lawful and it was obvious that the item was incriminating.State v. Waddy (1992), 63 Ohio St.3d 424, 442, 588 N.E.2d 819. State v.Suber (1997), 118 Ohio App.3d 771, 776, 694 N.E.2d 98. Thus, even absent Appellant's incriminating statements, in all probability the gun would have been admitted at trial.
 {¶ 22} Appellant's second assignment of error states:
 {¶ 23} "The trial court erred when it allowed the State to call two additional witnesses that were never disclosed to defense counsel."
 {¶ 24} Appellant claims that the trial court erred in allowing the state to introduce the testimony of two witnesses who were not disclosed to the defense in advance of trial. Both witnesses' testimony concerned the chain of custody of the gun that was found in Appellant's car on the night in question.
 {¶ 25} Appellant filed his request for discovery on December 2, 2003, well in advance of the February 2006, trial. However, Appellant was not provided the names of Officer Barb Copeland and Agent Chad Foreman as potential state witnesses until the middle of his jury trial. Upon learning about these witnesses, the state sought *Page 9 
permission to introduce their testimony relative to the chain of custody only. The trial court permitted the testimony over objection.
 {¶ 26} The state's case also included the testimony of YPD Officer Tickerhoof. During his cross-examination he was unable to account for certain evidence, i.e., bullets and a pager, obtained at the scene of Appellant's arrest. His testimony evidently prompted the state's discovery of Officer Copeland and Agent Foreman in the middle of trial:
 {¶ 27} "Q Now, there's a chain of custody document on the front of there [State's Exhibit 1]; correct?
 {¶ 28} "A That's where you're talking about (indicating).
 {¶ 29} "Q Yeah. There's writing on the front?
 {¶ 30} "A Yes.
 {¶ 31} "Q Now, can I have that back for a second. Above that it says evidence?
 {¶ 32} "A Correct.
 {¶ 33} "Q What does it say is in the bag?
 {¶ 34} "A One magazine, nine rounds of ammo, two bags of crack, two bags of marijuana, one pager.
 {¶ 35} "Q Okay. And we saw you open — that's the bag you opened earlier today?
 {¶ 36} "A That's correct.
 {¶ 37} "Q Would you empty the contents of the bag now?
 {¶ 38} "A (Witness is complying.) *Page 10 
 {¶ 39} "Q Where's the pager?
 {¶ 40} "A I don't have it here.
 {¶ 41} "Q Where are the nine rounds of ammunition?
 {¶ 42} "A They are not in the bag." (Tr., pp. 276-277.)
 {¶ 43} Thereafter, and following a break in the trial, the prosecution advised the court that it learned about two chain of custody witnesses during the lunch hour. The transcript reveals the following discussion as to this issue:
 {¶ 44} "[THE STATE:] I would state that I just became aware of these witnesses today. Under Criminal Rule 16 we are under a continuing duty to disclose evidence when it becomes made available to us which to me was today. And the rule specifically states a supplemental disclosure can be made prior to or during trial. So there's no specific time limit where it says you have to do this. It is just when I became aware of it, which is today. I immediately brought it to the attention of defense counsel and the Court.
 {¶ 45} "[DEFENSE COUNSEL:] * * * [The prosecutor] did make it immediately available for me at the point where he found out about it but he was present since the case began. It started out as a gun grant case. He has had the case since the very beginning. We had a suppression hearing almost over a year ago in this matter. He hasn't found out about it until now? What else are we going to find out just this late. Disclosure is very important to a fair trial to my client and I would ask that you bar these witnesses from testifying. *Page 11 
 {¶ 46} "THE COURT: For the limited purpose of chain of custody the Court is going to allow the witnesses to testify concerning that matter with the instruction that you go no further with reasons behind." (Tr., pp. 331-332.)
 {¶ 47} Thereafter, Officer Copeland and Agent Foreman were permitted to testify. Their testimony explained a gap in the state's chain of custody relative to the gun found in Appellant's car. (Tr., pp. 491-494, 503.)
 {¶ 48} Appellate courts review allegations of noncompliance with criminal discovery rules for an abuse of discretion. State v.Parson (1983), 6 Ohio St.3d 442, 445, 453 N.E.2d 689. Crim.R. 16(B), disclosure of evidence by the prosecuting attorney, states in part:
 {¶ 49} "(e) * * * Upon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial, together with any record of prior felony convictions of any such witness, which record is within the knowledge of the prosecuting attorney. Names and addresses of witnesses shall not be subject to disclosure if the prosecuting attorney certifies to the court that to do so may subject the witness or others to physical or substantial economic harm or coercion. * * *."
 {¶ 50} Crim.R. 16(E), regulation of discovery, provides in part,
 {¶ 51} "(3) Failure to comply. If at any time during the course of the
proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party *Page 12 
from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." (Emphasis added.)
 {¶ 52} The Ohio Supreme Court in Parson, supra, set forth three factors to apply when assessing the state's failure to comply with its discovery obligations. First, a court should address whether the state intentionally failed to disclose evidence. Second, a court should assess whether the defendant can demonstrate that advanced knowledge of the undisclosed evidence would have helped his case. Finally, a court should consider whether a defendant is prejudiced as a result of the untimely disclosure. Id. at 445.
 {¶ 53} On appeal, Appellant claims that the state generally failed to meet its discovery obligation resulting in a denial of his right to investigate these witnesses in advance of trial. Appellant does not claim that the state intentionally failed to disclose these witnesses and he does not allege any specific prejudice as a result of the state's failure to comply with its duty to disclose witnesses' names in advance of trial. He simply claims that the state should not be allowed to take such a lackadaisical approach to its discovery obligations.
 {¶ 54} As Appellant contends, it appears that the state's untimely disclosure of trial witnesses was the result of some neglect in this case, but there is no indication as to how advanced disclosure of these witnesses could have assisted Appellant's defense. His counsel had the opportunity to fully cross-examine the witnesses at trial, and he points to no specific prejudice resulting from the delay. Appellant broadly argued at oral argument that, absent these witnesses, the state could not prove chain of custody and this could only have helped Appellant's case. However, it *Page 13 
was abundantly apparent to the jury, that the state had problems with the chain of custody, here. Not only is Appellant's argument highly speculative, but in any event there can be no prejudice because the actions of the state could only have helped Appellant's case. Accordingly, we are unable to find that the trial court abused its discretion here. Parson, supra. This claimed error lacks merit and is overruled.
 {¶ 55} In Appellant's third assignment of error he alleges:
 {¶ 56} "The trial court erred when it allowed John Pflugh to vouch for the credibility of a machine that he was not certified as an expert on."
 {¶ 57} Appellant claims that although John Pflugh, who performed the lab tests on the drugs in this matter, was qualified to testify as a chemist, he was not a technician qualified to testify about the reliability of the gas chromatograph / mass spectrometer machine. Thus, the trial court committed reversible error when it allowed Pflugh to testify as to the machine's operation and reliability.
 {¶ 58} The state alleges that Appellant did not object to Pflugh's allegedly improper testimony at trial and as a result he has waived all but plain error on appeal. Our review of the trial transcript, however, reveals that Appellant's counsel did object to Pflugh's testimony. He initially challenged Pflugh's qualifications as an expert under Evid.R. 702. This objection, made out of the presence of the jury, was overruled.
 {¶ 59} Appellant's counsel again objected to Pflugh's testimony, specifically taking issue with Pflugh's designation as an expert in the analysis of narcotics, stating, *Page 14 
 {¶ 60} "I would object to his conclusion as an expert. I do not know that the State provided sufficient evidence that the type of training he received beyond a biology degree, saying I've took [sic] numerous seminars that taught me how to do this, is sufficient where I think the State would need the names, dates and type of seminars that allege this proficiency, and since they did not do that, I don't believe the Court can find Mr. Pflugh to be an expert." (Tr., pp. 401-402.)
 {¶ 61} Accordingly, we review this alleged error for an abuse of discretion because rulings on evidentiary matters are well within a trial court's discretion. State v. Brown, 9th Dist. No. 04CA008510,2005-Ohio-2141, at ¶ 14, citing McKay Machine Co. v. Rodman (1967), 11 Ohio St.2d 77, 82, 228 N.E.2d 304.
 {¶ 62} A review of Pflugh's testimony reveals that he was subject to voir dire out of the presence of the jury. Pflugh had been employed by a private company, Tri-State Labs, for six years as a forensic chemist. He has a degree in biology, and upon graduation, he began working in environmental labs. (Tr., p. 398.) He was questioned as to his training to operate and review qualitative analyses from a gas chromatography / mass spectrometer machine. He had no special license to operate the machines, but was in charge of maintaining the equipment based on training gained through seminars offered by the manufacturers. (Tr., pp. 382-387.)
 {¶ 63} Pflugh was asked about the scientific basis for the use of the gas chromatography / mass spectrometer, and he explained,
 {¶ 64} "A It is a qualitative measurement of an organic molecule, in this case cocaine or THS or diacetylmorphine, whatever it may be. It is the isolation and identification of those molecules that may be present. *Page 15 
 {¶ 65} "Q How long has that been — these machines been capable of doing that?
 {¶ 66} "A Since probably the early eighties." (Tr., p. 389.)
 {¶ 67} Pflugh also testified that if the machine is operating properly, then its analysis is 100 percent accurate. In the event that it is not operating correctly, then he uses the backup instrument. (Tr., p. 389.)
 {¶ 68} At the time of his involvement with this case, his company was paid by the police department to conduct this type of analysis. Pflugh explained that individuals do not get certified or licensed to operate this type of equipment; instead, it is up to a laboratory to become licensed. Pflugh indicated that he had been operating these machines and conducting this type of testing since 1986. (Tr., p. 391.) Pflugh further stated that he finds this type of testing reliable and that all other labs in the State of Ohio use this type of test to determine the existence of a controlled substance. (Tr., pp. 391-392.)
 {¶ 69} He subsequently described for the jury how the machine works, stating,
 {¶ 70} "The gas chromatograph portion would separate organic molecules on a molecular level. The mass spectrometer separates various atoms within those molecules. The ratio of those atoms and their abundance to each other would then be compared to a library, the library being a collection of various mass spectrometer data as compiled by various agencies throughout the world to help identify. Since we did do a high percentage of marijuana, cocaine and heroine [sic], we enter a known standard of those components prior to beginning the analysis." (Tr., pp. 410-411.) *Page 16 
 {¶ 71} Pflugh verified that he followed his lab's procedures in this case and used a separate verification with another machine. He concluded, based on a reasonable degree of scientific certainty, that State's Exhibits A and B contained the base form of cocaine, known as crack. The total weight of both was 5.193 grams of cocaine base. (Tr., pp. 412-413, 415.)
 {¶ 72} Appellant did not present any evidence disputing the procedures employed in Pflugh's analysis. The only evidence contrary to Pflugh's identification of the cocaine was Appellant's self-serving testimony that one of the baggies contained cocoa butter for his lips. (Tr., p. 560.)
 {¶ 73} Testimony by experts is governed by Evid.R. 702, which states,
 {¶ 74} "A witness may testify as an expert if all of the following apply:
 {¶ 75} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 76} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 77} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 78} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles; *Page 17 
 {¶ 79} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 80} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 81} Further, the Supreme Court in McKay, supra, held that experts should be used in matters involving scientific, mechanical, professional, or other instances where special study, experience, or observation is not within the general knowledge of laymen. Id. at 81. Thus, as long as the expert's testimony assists the trier of fact to understand the evidence, it is admissible. Evid.R. 702.
 {¶ 82} In the instant matter, it is apparent the Pflugh's testimony did assist the trier of fact. He described the science behind the gas chromatography / mass spectrometer machine; his experience with the machine; and confirmed the results reached in Appellant's case. Accordingly, we cannot find an abuse of discretion since Pflugh's testimony touched on areas ordinarily beyond the jury's understanding and likely aided the trier of fact. As such, this assignment of error lacks merit and is overruled.
 {¶ 83} Appellant's fourth and final argument on appeal asserts,
 {¶ 84} "Because the State's chain of custody for the evidence was broken, the verdict was against the manifest weight of the evidence."
 {¶ 85} In this assignment of error Appellant takes issue with the state's general mishandling of the evidence in his case. He alleges that there were too many individuals handling the evidence and that the state's lack of care was evident at trial. *Page 18 
Appellant claims that the chain of evidence was spoiled and that his conviction was against the weight of the evidence.
 {¶ 86} The record reflects that Officer Butler was at the scene, and he logged in the items both found on Appellant and in Appellant's vehicle on the night in question. These items consisted of a pistol, a magazine or clip from the weapon, bullets, baggies of suspected crack cocaine and marijuana, and one pager. Butler identified State's Exhibit Number Two as the gun, clip, and bullets at trial, explaining that he had placed the evidence tag on these items after they were seized from Appellant's vehicle. He also identified State's Exhibit Number One at trial, the baggies of suspected marijuana and crack cocaine. (Tr., pp. 301-304.) Butler explained the process of logging items into evidence: an officer takes, "the suspected drugs to the police station, fill[ing] out an evidence tag, fill[ing] out the incident number on the bag, log[ging] it into an evidence book * * * and put[ting] it inside a locked locker[.]" (Tr., p. 304.) He confirmed that he followed those steps for State's Exhibits Numbered One and Two. (Tr., pp. 304-305.)
 {¶ 87} Appellant takes issue with the fact that Officer Tickerhoof did not witness Butler log in this evidence, indicating that Butler's initials were not on the evidence bag at the time of trial. He also claims error based on the fact that Tickerhoof was unable to explain why the bullets and a pager were missing from the evidence locker at the time of trial. (Tr., pp. 276-277.)
 {¶ 88} Nevertheless, Appellant does not explain how locating the missing pager or bullets would have benefited his defense. His counsel did not take issue with this missing pager or ammunition at the time of trial and Appellant does not *Page 19 
complain that he was denied an opportunity to examine any of the evidence against him. Thus, Appellant does not explain how he was prejudiced, here. To the contrary, the state's mishandling of the evidence was before the jury for its consideration.
 {¶ 89} Evid.R. 901(A), requirement of authentication or identification, states,
 {¶ 90} "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
 {¶ 91} Evidence may be authenticated by testimony that a matter is what it is claimed to be. Evid.R. 901(B)(1). "Chain of custody is a part of the authentication and identification mandate set forth in Evid.R. 901, and the state has the burden of establishing the chain of custody of a specific piece of evidence." State v. Brown (1995),107 Ohio App.3d 194, 200, 668 N.E.2d 514, 517, citing State v. Barzacchini (1994),96 Ohio App.3d 440, 457-458, 645 N.E.2d 137. However, the burden is not absolute. The state must only prove, "that it is reasonably certain that substitution, alteration or tampering did not occur." State v.Blevins (1987), 36 Ohio App.3d 147, 150, 521 N.E.2d 1105. Breaks in the chain of custody go to the weight of the evidence, not to its admissibility. Brown, supra, at 200, 668 N.E.2d at 517.
 {¶ 92} Although it appears that the state was less than perfect in its handling of the evidence against Appellant, he has not demonstrated that the state's alleged shortcomings negatively affected his trial. In fact, it can be argued that the many missteps in the officers' handling of the evidence could only have helped Appellant. In any event, Appellant's final assignment of error lacks merit and is overruled. *Page 20 {¶ 93} In conclusion, all of Appellant's assignments of error lack merit and are overruled. Appellant's convictions are hereby affirmed in full.
 Donofrio, J., concurs. DeGenaro, P.J., concurs. *Page 1