JOURNAL ENTRY {¶ 1} Motion by appellant for reconsideration is denied.
 {¶ 2} The Journal Entry and Opinion of this court in this case, released on February 12, 2004, contained clerical errors or oversights on page eight, second paragraph, second and fourth sentences, as follows:
 {¶ 3} For instance, the children have not seen appellant since their removal nor have they requested to see him. [Footnote omitted.] The record is replete with evidence of physical and emotional abuse. Not only was this abuse corporal in its application, it had the semblance of humiliation. [Footnote omitted.]
 {¶ 4} These clerical errors or oversights are hereby corrected to read as follows:
 {¶ 5} The children's limited visitations with appellant were so strained and lacked basic familial interaction that they were eventually terminated. Further, since their separation, the children have not requested to see appellant.[1] The record is replete with evidence of physical and emotional abuse. Also, not only was this abuse corporal in its application, it had the semblance of humiliation.[2]
 {¶ 6} It is hereby ordered that said Journal Entry and Opinion of February 12, 2004 be amended nunc pro tunc to correct the errors in this opinion as stated above.
 {¶ 7} It is further ordered that, as so amended, said Journal Entry and Opinion of February 12, 2004 shall stand in full force and effect in all its particulars.
 {¶ 8} The corrected entry is attached.
[1] It can be argued S.B.'s return home after running away was out of fear of being on the street, not a genuine desire to return to the home. This contention is supported by S.B.'s subsequent refusal to see appellant.
[2] The record shows that appellant dragged D.B. off the school bus and threatened the bus monitor, brought the paddle used for punishment to school and showed it to D.B.'s classmates, and whipped S.B. in the school parking lot.
Defendant-appellant G.B. ("appellant") appeals the decision of the Cuyahoga County Juvenile Court that awarded permanent custody of appellant's three children to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons stated below, we affirm.
 I.
Appellant and his wife are the adoptive parents of three minor children, S.B. (5-09-1989), D.B. (9-20-1987), and Dw.B. (6-19-1990), hereinafter referred to by these initials or collectively as "the children."[1] On September 6, 2000, the children were removed from their adoptive home following a CCDCFS investigation revealing appellant had struck S.B. with his hand.[2] Appellant stated his belief in corporal punishment under the guise of biblical authority. Following their removal from the home, the children were placed in separate foster care environments.
Subsequent to his foster placement, Dw.B. was hospitalized for emotional stabilization and then released. He received therapy at the Child and Adolescent Service Center of Canton, Ohio for approximately one year, where he showed behavioral and academic improvement.
D.B. has been living in a foster home in Canton and attending the Valley Counseling Service, Inc. Her guardian ad litem ("GAL") reports that separation from her brothers has caused her anxiety and grief.
S.B. was placed in a foster home and, due to an incident therein, was charged with assaulting his foster mother and was placed on probation. He was placed in the Cleveland Christian Home, where he ran away on several occasions.[3] Since July 2002, S.B. has stayed at Parmadale.
On April 30, 2001, the children were deemed neglected and were committed to the temporary custody of CCDCFS. A case plan was then developed for the family consisting of parenting classes and anger management courses. On September 4, 2001, CCDCFS was granted an extension of temporary custody.
On January 7, 2002, CCDCFS filed a motion to modify temporary custody to permanent custody. On August 14, 2002, a hearing was held, wherein appellant discharged his court-appointed attorney and elected to proceed pro se. The children's GAL recommended a planned permanent living arrangement ("PPLA")[4] for Dw.B. and S.B. with the possibility of reunification with appellant. The GAL recommended D.B. be placed in the permanent custody of CCDCFS.
On January 17, 2003, the trial court awarded permanent custody of each child to CCDCFS, pursuant to R.C. 2151.414(D) and2151.414(E). The court rejected the PPLA set forth in R.C.2151.353(5), finding no significant and positive relationship with the parents and a lack of desire by the children for reunification.
Appellant timely appealed this decision and sets forth one assignment of error for our review.
 II.
In his sole assignment of error, appellant argues that "the trial court committed error to the prejudice of appellant contrary to the manifest weight of the evidence in determining a grant of permanent custody to CCDCFS to be in the best interest of the children." For the reasons stated below, we affirm.
Manifest weight concerns whether the jury, or in this case the judge, lost its way creating a manifest miscarriage of justice.State v. Thompkins (1987), 78 Ohio St.3d 380. "Judgments supported by some competent credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Whatley v. Tokheim Corp. (Jan. 30, 1986), Cuyahoga App. No. 49407, citing C.E. Morris v. Foley Construction Co.
(1978), 54 Ohio St.2d 29. The credibility of witnesses and the weight given to their testimony are primarily matters for the trier of fact. Thompkins, supra. "* * * To the extent civil manifest weight review is less demanding than that in criminal matters, in juvenile proceedings such review should more closely approximate the criminal standard." In re N.B., Cuyahoga App. No. 81392, 2003-Ohio-3656. Having reviewed the matter sub judice, we find that the trial court's award of permanent custody does not constitute a manifest miscarriage of justice.
Pursuant to R.C. 2151.414(B)(1), in order for a child to be placed in the custody of an agency, the trial court must first determine one of four conditions exist, namely:
"a) The child is not abandoned or orphaned or has not been intemporary custody of one or more public children servicesagencies or private child placing agencies for twelve or moremonths of a consecutive twenty-two month period ending on orafter March 18, 1999, and the child cannot be placed with eitherof the child's parents within a reasonable time or should not beplaced with the child's parents.
 b) The child is abandoned.
 c) The child is orphaned, and there are no relatives of thechild who are able to take permanent custody.
 d) The child has been in the temporary custody of one or morepublic children services or private child placing agencies fortwelve or more months of a consecutive twenty-two month periodending on or after March 18, 1999."
R.C. 2151.414(B) provides that once any of the above conditions exists, a court may award permanent custody of a child to an agency if the court determines, by clear and convincing evidence,[5] that it is in the best interest of the child.In re Joseph Holyak (July 12, 2001), Cuyahoga App. No. 78890. In the case sub judice, the court found that R.C.2151.414(B)(1)(d) applies.
In determining the best interest of the child, the court must consider all relevant factors including, but not limited to, those contained in R.C. 2151.414(D). These factors include the interaction of the child with the child's parents, siblings and foster parents, the wishes of the child, the custodial history of the child, and the child's need for legal secure permanent placement. Reviewing the factors listed in R.C. 2151.414(D), we find the trial court had competent credible evidence to determine the granting of permanent custody to the state was in the children's best interests.
Appellant argues that although his relationship with his children has been strained at times, the children maintain a strong familial bond. This bond is evidenced by the grief and anxiety suffered by D.B. However, this familial bond is questionable, as appellant testified that should the children be reunited with him and they act out in the future, he will have no other recourse but to have the children removed from the home. Such testimony does not invoke confidence that secure permanent placement, under R.C. 2151.414(D), will be achieved. As early teenagers, the children are bound to "act up" in the future as do all teenagers.
In regards to the wishes of the children, appellant argues that the children's statements against reunification are not consistent, as evidenced by S.B.'s running away from Cleveland Christian Home and returning home to appellant. Appellant relies upon the children's GAL's report that found reunification a possibility for S.B. and Dw.B. Such reunification would be possible through the PPLA suggested by the GAL and authorized by R.C. 2151.353. Further, appellant argues that he provided a secure home for the children and although his disciplinary tactics were an issue, he has worked to resolve those issues through counseling, anger management and parenting classes.
Despite appellant's arguments to the contrary, the record reveals that the court had evidence upon which to rely in awarding permanent custody. The children's limited visitations with appellant were so strained and lacked basic familial interaction that they were eventually terminated. Further, since their separation, the children have not requested to see appellant.[6] The record is replete with evidence of physical and emotional abuse. Also, not only was this abuse corporal in its application, it had the semblance of humiliation.[7]
Appellant testified to specific incidents of his emotional and physical abuse, claiming he thought his actions were appropriate.[8] 0While the GAL felt reunification was a possibility with S.B. and Dw.B., and though a GAL recommendation is useful and should be allotted full consideration, a trial court is not bound by the recommendation. In re Bunch (Aug. 3, 2000), Cuyahoga App. No. 76493. We find it curious that the GAL would find permanent custody favorable for one child while suggesting the possibility of reunification for the remaining children. Had appellant cured the deficiencies that led to the temporary loss of custody, the household would seemingly be appropriate for all the children, not just two of them. The GAL recommendation also states: "It is clear that he [appellant] expects the children and not his approach to parenting to change," and that "the [appellant] could not get beyond the issue of blaming the children for the current situation * * *." Additionally, since their removal from appellant's home, the children have all improved emotionally and behaviorally.
Appellant also argues that the trial court failed to find the existence of a factor listed in R.C. 2151.414(E) as to why the children could not or should not be placed with the parent within a reasonable time. However, the court's journal entry reveals that the court considered the factors enumerated in R.C.2151.414(E) and found that appellant 1) failed to remedy the problems that initially caused the children to be removed; 2) abandoned the children; 3) is unwilling to provide basic necessities or prevent abuse; and 4) has committed abuse and the likelihood of recurrence threatens the children's safety. Our review of the record finds that the court's decision is supported by competent credible evidence and is, therefore, appropriate.
In addition to the above-stated facts, the social worker assigned to the case, Birdie Blizzard Jackson ("Jackson"), testified that despite appellant's participation in family counseling and anger management classes, he failed to benefit from such services. Appellant also refused to partake in individual counseling. Further, appellant maintained throughout the proceedings the belief that his children's own behaviors were the cause of their removal from the home. He also failed to exhibit an understanding of his children's emotional well-being. Testimony indicated that each child suffers from emotional and behavioral problems caused by the environment inside appellant's home[9] and that each has improved since their removal. Since their removal from appellant's home, the children have all improved emotionally and behaviorally.
The trial court enjoys the presumption that its findings were correct and its discretion is to be given the utmost respect. Inre Campbell (Oct. 12, 2000), Cuyahoga App. Nos. 77552 77603. A reviewing court must take into account that the knowledge gained through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. A court exercising juvenile court jurisdiction is invested with very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment. Id. Having reviewed the evidence and the standards under the law, we cannot say that the trial court erred finding permanent custody to be in the best interest of the children. The evidence contained in the record was sufficient for the court to determine permanent custody was in the best interest of the children.
Judgment affirmed.
It is ordered that appellees recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, P.J., and Diane Karpinski, J., Concur.
[1] Appellant and his wife adopted the children as a sibling group and maintained custody for nine years.
[2] This resulted in S.B.'s tooth penetrating his lip.
[3] On one occasion, S.B. ran back to appellant's home stating that he wanted to return permanently.
[4] See R.C. 2151.353.
[5] "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." State v. Namestnik, Cuyahoga App. No. 82228, 2003-Ohio-4656, citing Cross v. Ledford (1954),161 Ohio St. 469, 477.
[6] It can be argued S.B.'s return home after running away was out of fear of being on the street, not a genuine desire to return to the home. This contention is supported by S.B.'s subsequent refusal to see appellant.
[7] The record shows that appellant dragged D.B. off the school bus and threatened the bus monitor, brought the paddle used for punishment to school and showed it to D.B.'s classmates, and whipped S.B. in the school parking lot.
[8] One such instance included repeated beatings of then six-year-old D.B.
[9] For instance, Dw.B. was diagnosed with depression and anxiety. D.B. was diagnosed with adjustment disorder with mixed disturbances of emotion and conduct, physical abuse, attention deficit hyperactive disorder, and low self-esteem.