THE OHIO NATIONAL BANK OF COLUMBUS ET AL., APPELLEES,
v. ADAIR ET AL., APPELLANTS

(No. 77-303—Decided April 5, 1978.)

28

*Messrs. Tingley, Hurd & Emens* and *Mr. John B. Tingley,* for appellees The Ohio National Bank of Columbus et al.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Robert E. Leach* and *Mr. Richard R. Stedman,* for appellees Maribel H. Finnell, Michael H. Finnell, Patricia Kulha and Lesley Hartman Finnell.

*Mr. Fred G. Preston,* for appellees Carter Hartman Finnell and Hunter Vogel Finnell.

*Messrs. Kincaid, Palmer & Randall* and *Mr. James R. Moats,* for appellants Barry J. Adair et al.

*Messrs. George, Greek, King, McMahon & McConnaughey, Mr. William R. Case* and *Mr. David C. Stradley,* for appellant Stephen J. Vergamini, Trustee.

LOCHER, J. The cardinal question presented is whether the trust will terminate upon the renunciation and the relinquishment of the income received by the sole remaining income beneficiary, Maribel, and the distribution of the trust corpus shall thereby be accelerated and distributed to her children, Michael and Patricia.

The doctrine of acceleration, as applied to the law of property, refers to the hastening of the owner of a future interest towards a status of present possession or enjoyment by reason of the failure of the preceding estate. 2 Simes & Smith, Law of Future Interests (2 Ed.) 263, What is Acceleration, Section 791. The doctrine of acceleration is generally used when the temporary interest, preceding the remainder, fails to come into existence, or, as in the case *sub judice,* coming into existence, terminates in some manner for which the testator did not provide. 2 Texas Tech. L. Rev. 132 (1970). It is apparent that, in Ohio, the ac-

celeration principle in renunciation cases has been adopted, at least where the remainder is vested. See *Holdren* v. *Holdren* (1908), 78 Ohio St. 276; *Davidson* v. *Miners and Mechanics Savings & Trust Co.* (1935), 129 Ohio St. 418; *Crabbe* v. *Lingo* (1946), 146 Ohio St. 489; *Millikin* v. *Welliver* (1882), 37 Ohio St. 460.[1] The rationale given for this rule in 2 Restatement of Property 962, Comment *a*, Section 231 (1936), is that acceleration is in accordance with what is normally to be inferred as the intent of the "conveyor" (herein testator), namely that as each successive interest sought to be created by him ends or becomes impossible, the next interest in order should move up. However, the application of the doctrine of acceleration must be in furtherance of the intention of the testator, and never in contravention thereof.

"The doctrine of acceleration of estates is founded upon the desire of the courts of equity to give effect to the manifest intention of the testator; and when such intention would be frustrated by allowing it, it will be denied." *In re Rogers' Trust Estate* (1903), 97 Md. 674, 677, 55 A. 679.

Ohio case law is in accord with this generally accepted limitation on the application of acceleration. In *Holdren* v. *Holdren, supra* (78 Ohio St. 276), this court stated, at page 282:

"This doctrine [acceleration], however, is based upon the presumed intention of the testator, and it can be invoked only to effect that intention, and not to defeat it. * * *"

See, also, *Davidson* v. *Miners and Mechanics Savings & Trust Co., supra* (129 Ohio St. 418); Folkerth, Acceleration of Future Interests in Ohio, 3 Ohio St. L. J 171 (1937).

---

[1] R. C. 2107.39 provides, in pertinent part:

"Unless the will expressly provides that in case of such an election [under R. C. 2105.06] there shall be no acceleration of remainder or other interests bequeathed or devised by the will, the balance of the net estate shall be disposed of as though the spouse had predeceased the testator."

Acceleration of the remainder interest in the present cause must be based upon the testator's general intent as found from a reconstruction of the trust instrument in view of this unanticipated renunciation. As recently noted in *Carr* v. *Stradley* (1977), 52 Ohio St. 2d 220, at page 224, that in reviewing will construction cases this court has repeatedly observed the well-settled general rules set forth in paragraphs one through four of the syllabus in *Townsend's Executors* v. *Townsend* (1874), 25 Ohio St. 477, as follows:

"1. In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator.

"2. Such intention must be ascertained from the words contained in the will.

"3. The words contained in the will, if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appear[s] from the context that they were used by the testator in some secondary sense.

"4. All the parts of the will must be construed together, and effect, if possible, given to every word contained in it."

Item five of the will establishes a testamentary trust of the residue of the estate and, as herein pertinent, provides:

"14. If any of my said grandchildren or great grandchildren, who shall have been born before my death, shall not only survive me and be living at the time my daughter, Maribel Schumacher, shall have attained the age of fifty-two (52) years, but shall be living at the time of her death, and shall die leaving issue surviving them, or any of them, I hereby give, devise and bequeath to such issue or to the issue of the survivor or survivors of them in equal shares, *per stirpes,* * * * absolutely and in fee simple, all of my estate, real, personal and mixed * * *.

"15. If any of my said grandchildren or great grandchildren who shall have been born before my death shall

survive my said daughter, and if all of them so surviving her shall die without issue surviving them, at the death of the survivor of them, all of my estate then in existence I hereby give * * * in fee simple in the following shares to the following persons and classes of persons, to-wit: One undivided one-third part thereof to the heirs of my said wife and two undivided one-third parts thereof to the heirs of myself * * *.''

It is evident from reading the preceding provisions and other provisions within item five that the testator has clearly manifested his intentions. His plan, as noted by Judge Whiteside's dissent in the Court of Appeals, was to hold the corpus in trust and to delay the determination of the ultimate beneficiary as long as permitted to assure that his estate would pass to his issue, with a contingency plan specifying the heirs of his wife and himself if there were no surviving issue. This intent to delay distribution is further evinced by an examination of the nonmaterialized estates provided for in item five. Under paragraphs 12[a] and 14, had any of the grandchildren predeceased the

---

[a]Paragraph 12 of item five reads as follows:

"Subject to the foregoing bequests, I give and bequeath all of the net income of my estate to the child or children of my daughter, Maribel Schumacher, and to the issue of the deceased child or children of my said daughter, who shall survive me, if any there be, and direct my executor and trustee to pay the same to them, or to the survivor or survivors of them, share and share alike, *per stirpes* and not *per capita*, during their natural lives; but if the distributive share of the income of my estate so given and bequeathed to any of my said grandchildren or great grandchildren during his or her minority shall exceed the sum of Five Thousand (5,000.00) Dollars per annum, I hereby empower and direct my executor and trustee during such minority not to pay such excess to my said grandchild or great grandchild, but empower and direct him to withhold, retain and invest such excess until such grandchild or great grandchild shall have attained the age of majority, at which time I empower and direct my executor and trustee to pay to such grandchild or great grandchild the aggregate amount of such excess which shall have been withheld by my executor and trustee as aforesaid and all income received thereon; and, by the words, 'net income,' used in this paragraph I mean what shall remain of the gross income of my estate after the payment of taxes and assessments on my

testator leaving issue (great-grandchildren) surviving his death, the trust would have continued another generation beyond Maribel's life estate. Additionally, paragraph 13° provided for the termination of the trust if the testator's daughter survived him and lived to the age of 52 years, and, if at that age, there were no living child or grandchild, or if she thereafter outlived all her living issue. The complexity and the detailed alternatives demonstrate that the trust was the product of a skilled draftsman in the law, attempting to delay the vesting of the estate by meticulously avoiding the oscillating grasp of the rule of perpetuities. We can not agree with the trial court's finding that there was no support for the conclusion that the testator would not want acceleration upon the renunciation of the life estate. Acceleration would clearly seem to vitiate the expressed intentions of the testator. As an example, if acceleration presently would occur, one-half of the estate will pass to Patricia, who has no issue. If she then predeceases Maribel, the remains of one-half of the testator's estate would not go to the surviving issue of Maribel as directed by item five, paragraph 14, but would descend to the heirs of Patricia.

---

real estate, taxes on my personal property, the cost of insurance, the cost of maintaining my real estate in suitable condition and repair, the cost of erecting, remodeling and improving buildings on said real estate, the cost of administering my estate, the bequests hereinbefore made, and my just debts."

°Paragraph 13 of item five reads:

"If my said daughter shall survive me and shall live to the age of fifty-two (52) years, and if when she shall have attained that age there shall not be living any child or grandchild of my said daughter, or if when my said daughter shall have attained the age of fifty-two (52) years there shall be living one or more children or grandchildren of my said daughter and she shall survive any and all of her said children and grandchildren, then and in that event I give, devise and bequeath to my said daughter all of my real and personal estate absolutely and in fee simple, and empower and direct my executor and trustee to deliver to her any conveyance or conveyances or other instrument or instruments of writing which may be necessary or proper in order to pass the title in and to my estate to her or to confirm such title in her."

We are not, in this case, confronted with the usual situation involving acceleration, where the testator leaves the property to his wife for life with a remainder upon her death and she renounces the will. But, here we are involved with the termination of the third of four once possible life estates provided under this instrument, not for the wife, but for the surviving granddaughter. In this situation, the granddaughter possessed no alternative to taking under the trust. Although the trial court found no impediment to her renunciation of her life interest, this does not give her a right to terminate the trust merely because the testator did not expressly negate acceleration upon such an occurrence. To view this life estate as merely a burden upon the remainder and an impediment to the remainder's vesting as urged by appellees is to ignore its viable role in keeping the estate in the testator's family, i. e., lineal descendants. Justice O'Neill, in writing for an undivided court, in *Casey* v. *Gallagher* (1967), 11 Ohio St. 2d 42, noted that Ohio decisions have given effect to a testator's plan to keep property in the family, in spite of the rule of construction favoring early vesting. Therein it was stated at page 51:

"In both the *Cleveland Trust Co.* case, *supra* (166 Ohio St. 329), at page 333, and *Kohler* v. *Brindley, Exr., supra* (116 Ohio App. 241), at page 244, the court noted the factor of a plan to keep property in the family, in holding that interests in heirs of the testator did not vest until the death of the life tenant. See, also, *Tiedtke, Exr.*, v. *Tiedtke, supra* (157 Ohio St. 554), at page 561; *Warner* v. *Commissioner of Internal Revenue* (C C. A. 2, 1934), 72 F. 2d 225, certiorari denied, 293 U. S. 620, indicating at page 228 that the factor of blood relationship was also a factor in *Barr* v. *Denney, supra* (79 Ohio St. 358)."

Furthermore, acceleration in the instant cause is not only inconsistent with the testator's intentions as inferred from a careful exegesis of the entire instrument, but is antithetical to the precise wording of the residuary bequest and its meaning as described in the case law of Ohio. *Townsend's Executors* v. *Townsend, supra* (25 Ohio St.

477). In reiteration, paragraph 14 of item five states, in relevant part:

"If any of my said grandchildren * * * shall die *leaving issue surviving them,* or any of them, I hereby give, devise and bequeath to such issue * * * in equal shares, *per stirpes* * * * all of my estate * * *." (Emphasis added.)

In *Stevens* v. *Stevens* (1929), 121 Ohio St. 490, where a legacy was payable upon the death of a life tenant to a named legatee "should he then be living," this court refused to accelerate. Judge Matthias, explaining in *Stevens,* stated, at page 493:

"The express condition in the bequest to Buck and in the bequest to Stevens, '*should he then be living,*' referring to the time of the death of testator's wife, cannot be ignored. Under the very terms of this will these two legatees cannot take the bequest prior to the time designated, and, if not then living, the legacy would lapse. The intention of the testator is plain and cannot be thwarted or defeated by the action of another. * * *" (Emphasis added.)

Similarly, the first two paragraphs of the syllabus in *Holt* v. *Lamb* (1867), 17 Ohio St. 374, read as follows:

"1. Where land is devised to a tenant for life, with direction that at his death it be sold, and the proceeds divided among his children, the children may elect at his death to take the land itself, or to have it sold for their benefit.

"2. The right or estate of such children does not accrue until the death of the tenant for life, although his estate may be determined during his lifetime."

Furthermore, although acceleration was allowed in *Davidson* v. *Miners and Mechanics Savings & Trust Co., supra* (129 Ohio St. 418), Judge Zimmerman stated, at page 426:

"The present case is distinguishable from *Stevens, Exr.,* v. *Stevens,* 121 Ohio St., 490, * * * where acceleration was refused because of the contingent character of the remainders there involved."

A careful study of the trust in *Davidson, supra,* re-

veals no precise requirement of survival, as existed in *Stevens, supra,* or as exists in the instant cause. The instrument, in pertinent part, read, at page 420:

" 'To my friend of many years standing Elizabeth J. Stievenart * * * I direct that one-half of the income from the above trust funds shall be paid her during her life * * * and that at her death, the same amount and in the same manner shall be paid to The Ohio Valley Hospital of this city, its heirs, successors or assigns forever * * *.' "

Later, in *Ohio National Bank* v. *Boone* (1942), 139 Ohio St. 361 (a case cited by appellees for the rule of construction favoring early vesting), Judge Zimmerman again stated that a direction to divide the estate after the death of the life beneficiary does not defer the time of vesting unless an opposite intention appears, but then continued to recognize, at page 365:

"* * * In the cases of *Sinton* v. *Boyd,* 19 Ohio St., 30, 2 Am. Rep., 369; *Richey, Exr.,* v. *Johnson,* 30 Ohio St., 288; and *Hamilton* v. *Rodgers,* 38 Ohio St., 242, words of survivorship or other compelling language was present evidencing a well defined purpose on the part of the testator that the remainder should not vest until the time of division or distribution arrived."

In *Sinton* v. *Boyd* (1870), 19 Ohio St. 30, the court, in construing a will in which the testator gave a life estate to his wife and at her death directed that all remaining be divided equally amongst his children or the *survivors of them,* held that no interest vested under the terms of the will in one of his children who predeceased the testator's wife. By providing that after his wife's death the farm was to be sold, and the proceeds of the sale to be divided equally between such of his brothers and sisters as might *then* be living, and the issue, or lineal descendants of such brothers and sisters as then might be dead, such issue to take *per stirpes,* the court, in *Richey, Exr.,* v. *Johnson* (1876), 30 Ohio St. 288, 296, found as the intention of the testator that:

"* * * The gift itself, and not merely the time of pay-

ment, remained contingent, therefore, during the life of the widow. The persons entitled to the enjoyment of the fund could not be ascertained till her death.''

A similar result was reached by this court in *Smith* v. *Block* (1876), 29 Ohio St. 488. In that case the *habendum* clause in a deed read as follows, at page 489:

'' 'To have and to hold the same to the said Catharine Smith during her natural life, and after her death, to the said *surviving children* of Elijah Smith and Catharine Smith, his wife * * *.' '' (Emphasis added.)

The court, in interpreting this language, found the following, at page 497:

''During the life of the mother, the right of the children to the possession of the estate was uncertain, depending upon their surviving their mother, the right belonging only to such as might so survive.

''It is the uncertainty of the *right* of enjoyment, and not the uncertainty of its actual enjoyment, which renders a remainder contingent. 4 Kent, 206.''

Clearly, Judge Matthias' statement in *Stevens* v. *Stevens, supra* (121 Ohio St. 490), that an expressed condition of survival can not be ignored is in accordance with this court's interpretation of similar conditions of survival in its other decisions.[4] Applying the rationale of *Stevens* to the case *sub judice*, the testator's expressed condition in the bequest to the "issue surviving," referring to the time of death of the testator's granddaughter, can not be ignored. Under the provisions of paragraph 14 of item five,

---

[4]See, also, 3 Restatement of Property 1258, Section 250, wherein is stated:

"*Added Word, Phrase or Clause Requiring Survival.*

"In a limitation purporting to create a remainder or an executory interest, a description of the intended takers (a) as persons (i) 'who survive' to a future time; or (ii) who are 'living' at the end of a prior interest or other period of time; or (b) by language having the same import as one of the expressions described in Clause (a) tends to establish as to the purported interest of each intended taker (c) that a requirement of survival exists; and (d) that such survival is a condition precedent of such interest."

the surviving issue of Maribel can not take the bequest prior to the time designated, *i. e.,* the death of Maribel. If there are no surviving issue, the estate is distributed according to paragraph 15 of item five. The intention of the testator is plainly manifested by his usage of words of survivorship. The persons entitled to the enjoyment of the fund can not be determined until the death of Maribel. To ignore the expressed condition of survival and to allow acceleration would be an utter disregard of the instructions in *Townsend's Executors* v. *Townsend, supra* (25 Ohio St. 477), that effect be given to every word of the instrument and the words, if technical, must be given their technical sense.

We, therefore, find that the testator has exhibited through the instrument a discernible intent that the trust instrument terminate upon the death of Maribel. Only at that time may it be determined which, if any, of her issue are living. Maribel is still living, so that a determination of who will take pursuant to the trust instrument must await her death. It is impossible to ascertain which, if any or if all, of her issue will predecease her. Furthermore, acceleration at this time will exclude the remote possibility of an unborn grandchild's right to enjoyment. A person is presumed to be able to have issue as long as he or she is alive. 2 Simes & Smith, Law of Future Interests, *supra,* at page 256, Presumption of Possibility of Issue, Section 777. Accordingly, we hold that an acceleration of the succeeding interest upon the renunciation and relinquishment of the income received by the sole remaining life beneficiary, Maribel, prior to her death will defeat the intent of the testator and will be denied.[5]

---

[5]A substantial portion of the briefs of both parties was addressed to the nature and technical classification of the remainders. Apparently, whether the remainder is vested, subject to defeasance or subject to a condition precedent, is, according to legal authorities, still of importance in determining whether the remainder will be accelerated. 2A Powell on Real Property, Paragraphs 309 and 310. Generally, it is stated that acceleration is not possible for a remainder, subject to a condition

38

The judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, P.. BROWN and SWEENEY, JJ., concur.

precedent, in which the condition precedent is one of survival and is construed as indicating an intention that the persons are to be ascertained at the time of death of the life tenant. Powell, *supra*, Paragraphs 309 and 310; 5 Scott on Trusts (3 Ed. 1967), Section 412.1; 2 Restatement of Property, Section 233 and Comment *e*; 2 Simes & Smith, The Law of Future Interests (2 Ed. 1936), Section 796.

In Ohio, every will construction is *sui generis* in the sense that the. intent of the testator is to be determined from the will under construction and technical rules of interpretation can be resorted to as an aid in construction, but may not control contrary to the testator's intent. *Davidson* v. *Miners and Mechanics Savings & Trust Co.*, *supra* (129 Ohio St. 418); *Barr* v. *Denney* (1909), 79 Ohio St. 358. In the present case, we determined without resorting to the well-settled, technical rules of interpretation that acceleration would not be allowed,. based upon a study of the trust instrument. It does appear, since the remainder sought to be accelerated in the case *sub judice* is subject to a condition precedent (see 3 Restatement of Property, *supra*, Section 250 (d) and Comments *i* and *j*; Powell, *supra*, Paragraph 328; Bergin & Haskell, Preface to Estate in Land and Future Interests, page 75, and, generally, pages 69-85 [1966]), that if the technical rule would have been applied, and there appears to be some authority for this application (*Trustees of Kenyon College* v. *Cleveland Trust Co.* [1935], 130 Ohio St. 107, 115, but criticized in Folkerth, Acceleration of Future Interests in Ohio, 3 Ohio St. L. J. 171, 173 [1937]), the result would still be to deny acceleration.