OPINION
{¶ 1} The present case involves a trust that was created in 1959, through the will of Frances R. Gallagher. After making various bequests, Mrs. Gallagher placed the residue of her property in trust for the benefit of her daughter, Frances Elizabeth Reynolds, during Reynolds' lifetime. The will also provided that after Mrs. Reynolds died, the trustee should hold and manage trust assets for the benefit of lineal descendants. When the trust agreement was created, Mrs. Reynolds had a son and daughter (Rodney Reynolds, Jr., and Rae Frances Reynolds, a/k/a Nora Gallagher).
 {¶ 2} Frances Gallagher died in 1964. Thereafter, and during Mrs. Reynolds' lifetime, trust proceeds were distributed as directed by the will. After Mrs. Reynolds died in January, 2001, the trustee (Bank One) filed an action in probate court, seeking instructions on how to further administer the trust. Bank One also asked the court to determine the heirs and the rights of beneficiaries.
 {¶ 3} At the time the action was filed, both Rodney and Nora were over the age of fifty, and neither had any lawful issue. However, Rodney did have an alleged illegitimate son, Timothy Ryan Olson Kilmartin, who was born on February 22, 1970. During the probate court proceedings, Rodney filed a stipulation agreeing that he was Kilmartin's natural father. Rodney also adopted his adult stepson (Mickey Eugene Reynolds) while the probate court action was pending. Later, however, Rodney filed a motion to vacate the stipulation of paternity, claiming that the stipulation was based on his belief that both adopted and natural sons would be treated as equal heirs. Rodney claimed his belief no longer appeared correct, due to changes in Ohio's statutory recognition of adopted adult children.
 {¶ 4} The probate court did not rule on the motion to vacate. Eventually, the court ordered that Bank One should continue to hold and administer the trust for the benefit of Nora and Rodney. Bank One was also ordered to divide the residuary trust into two separate but equal shares, and to hold one share for Nora and her lineal descendants. The other share was to be held for Rodney and his lineal descendants. Finally, the court stated that if either Rodney or Nora died without surviving lineal descendants, the share of the deceased party would be distributed to the decedent's estate.
 {¶ 5} After the trial court filed a nunc pro tunc certification under Civ. R. 54(B), Rodney and Bank One appealed. A notice of appeal was also filed by Ames Gardner, Jr., the guardian ad litem for the unknown lawful descendants of Francis Gallagher. Ultimately, Bank One dismissed its appeal and the appeals of Rodney and Gardner were consolidated.
 {¶ 6} As a single assignment of error, Rodney claims that "[t]he Probate Court erred in holding that the Testatrix intended to divide the residuary trust into two (2) shares."
 {¶ 7} Gardner's two assignment of errors are that:
 {¶ 8} "I. The Probate Court erred when it ordered the Trustee to divide the Trust into two (2) separate but equal shares, holding one share for the benefit of Defendant Gallagher and her lineal descendants and one share for the benefit of Defendant Reynolds and his lineal descendants. * * *
 {¶ 9} "II. The Probate Court erred when it ordered that in the event either Defendant Gallagher or Defendant Reynolds dies without surviving lineal descendants, the Trustee shall distribute his or her share of the Trust to his or her estate. * * *"
 {¶ 10} After considering the facts and applicable law, we find that the assignments of error have merit. As a result, this matter will be reversed and remanded to the probate court for further proceedings.
 I {¶ 11} Because all the assignments of error in this consolidated appeal are either similar or interrelated, we will consider them together. Two assignments of error challenge the probate court's decision to divide the residuary trust into equal shares. In a third assignment of error, the guardian ad litem contests the distribution of the trust principal and accumulated income. In this regard, the probate court held that if the grandchildren die without surviving lineal descendants, their share of the trust would be distributed to their own estate. The court's decision was based on the language in the trust, and in particular, the use of the term "per stirpes." Specifically, the court felt that by using this term, the testatrix wanted the trustee to divide the residuary trust into equal shares for her grandchildren, and to hold those shares for the benefit of their issue.
 {¶ 12} Because interpreting wills is a question of law, we apply de novo review to determinations of a testator's intent and the terms of a testamentary trust. Summers v. Summers
(1997), 121 Ohio App.3d 263, 267-268, 699 N.E.2d 958. This means that we apply the same standards that the trial court uses. Longv. Tokai Bank of California (1996), 114 Ohio App.3d 116, 119,682 N.E.2d 1052. It also means that "`[w]e review the judgment independently and without deference to the trial court's determination.'" Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 588, 641 N.E.2d 265 (citation omitted). In addition, Ohio follows these general rules for reviewing will construction cases:
 {¶ 13} "`1. In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator.
 {¶ 14} "2. Such intention must be ascertained from the words contained in the will.
 {¶ 15} "3. The words contained in the will, if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appear(s) from the context that they were used by the testator in some secondary sense.
 {¶ 16} "4. All the parts of the will must be construed together, and effect, if possible, given to every word contained in it." Ohio Nat. Bank of Columbus v. Adair (1978),54 Ohio St.2d 26, 30, 374 N.E.2d 415, quoting from Townsend's Executorsv. Townsend (1874), 25 Ohio St. 477, paragraphs one through four of the syllabus.
 {¶ 17} In the present case, Item V.A. of Frances Gallagher's will stated that:
 {¶ 18} "During the life of my daughter, Frances Elizabeth Reynolds, my Trustees in their unrestricted discretion may retain or distribute so much of the principal or income of the Trust assets to or for the use of my daughter, my grandchildren or my issue then living, as they may deem appropriate, to provide adequately for the support, maintenance, education and general welfare of them or any of them."
 {¶ 19} Paragraphs V. C and D. further stated that:
 {¶ 20} "[f]rom and after the death of my daughter, my trustees shall hold and manage the trust assets for the benefit successively of my living lineal descendants, per stirpes, indefinitely, subject only to the termination of the trust as hereinafter provided.
 {¶ 21} "D. In their unrestricted discretion, my trustees may retain or distribute so much of the principal or of the income therefrom, to or for the use and benefit of said respective beneficiaries or of their living issue, as they may deem appropriate for the purpose of providing for the welfare of them or any of them."
 {¶ 22} The trust termination provisions were contained in paragraphs V.E. and F. Under paragraph E., the trust could be terminated if it generated less than $5,000 in income per year. Paragraph F. provided for a definite termination date — twenty-one years after the death of the last surviving of the daughter and grandchildren, i.e., the last surviving of Mrs. Reynolds (the daughter), and Rodney and Nora (the grandchildren). At the time Bank One filed the lawsuit in probate court, trust assets amounted to about $3,000,000, and both Rodney and Nora were still alive. Consequently, there was no basis for terminating the trust.
 {¶ 23} If the trust terminated for lack of income, paragraph V.E. stated that the trustees should pay and deliver to each beneficiary "that portion of the trust assets that his share of the income would bear to the total trust income." In the event of a termination under paragraph V.F., the will provided that:
 {¶ 24} "[t]wenty-one (21) years after the death of the last survivor of my daughter, Frances Elizabeth Reynolds, and my grandchildren, Rae Frances Reynolds and Rodney Reynolds, Jr., the trust * * * shall terminate, and at that time the principal of the trust and any accumulated income shall vest in the same proportions as the income thereof at that time would have been distributable were it not for the fact of the discretion with reference to such distribution hereinbefore vested in my trustees."
 {¶ 25} The effect of the trial court decision is that the trustee will hold equal shares of the trust assets for Nora and Rodney. If Nora dies without issue, as one would expect at her age, Nora's share would be distributed to her estate and would not be available to Rodney or his lineal descendants. If the trial court's decision is reversed, all trust proceeds would be available to Rodney (if he outlived Nora), and Rodney's descendants would be entitled to the benefit of the entire trust proceeds (again, assuming Nora died without issue).
 {¶ 26} Appellants contend that the trust language shows an intent to benefit all living lineal descendants of the testatrix, without apportioning available benefits to any one individual and his or her generational line. Appellants further stress that the Trustee is not directed to divide and manage the assets; instead, the Trustee is to "hold and manage" Trust assets. According to Appellants, the trial court's reliance on the term "perstirpes" to divide the trust is inconsistent with the rest of the trust, which gives the trustee unlimited discretion to determine who receives benefits and when they receive benefits, if at all.
 {¶ 27} In reviewing the trust as a whole, we find that the intent was first to benefit the living issue of the testatrix during the her daughter's lifetime. During that time, the trustee had discretion to distribute trust principal and income to provide for support, maintenance, education, and general welfare of the daughter, the grandchildren, and any issue then living. The trust is not specific about proportions or percentages in which income should be distributed; instead, the trustee has discretion to decide.
 {¶ 28} After the daughter's death, the trust's second intent was to benefit the testatrix's living lineal descendants, successively and per stirpes, indefinitely, subject only to termination of the trust. Successively means "following in order." Merriam Webster's Collegiate Dictionary (1993) 1175. Perstirpes means that a testator's
 {¶ 29} "devise or bequest is to be divided into as many equal shares as there are members of the generation of heirs at law, which is identified as providing the roots or stirpes of theper stirpes gift, who are either living or who have died leaving lineal descendants, with an equal share being distributed to each living member of such generation and the share of each deceased member being divided per stirpes among his lineal descendants." Kraemer v. Hook (1958), 168 Ohio St. 221,152 N.E.2d 430, at paragraph two of the syllabus (italics added).
 {¶ 30} The parties agree that the grandchildren (Nora and Rodney) are the "root" generation for purposes of the perstirpes provision. Consequently, because both grandchildren were alive after the death of Frances Reynolds, paragraph V.C. indicates that the trust is to be held and managed for the benefit of the grandchildren in equal shares. The trust also clearly states that the trustee has discretion to distribute income to other living issue. However, because the assets are being held "for the benefit successively * * * of living lineal descendants per stirpes," each grandchild and his or her issue would be entitled to receive income derived from only one-half the principal amount of the trust. Specifically, Rodney and his issue (if any), could receive income from one-half the trust, and Nora and her issue (if any), could receive income from the other half of the trust. The probate court was obviously focusing on this point when it said that the trust should be divided in half, with each share being held for the benefit of each grandchild and his or her issue.
 {¶ 31} The probate court was not incorrect when it identified the separate nature of the shares in the trust. However, even if assets are held as separate shares within the trust, that does not mean the assets would flow to each grandchild before termination or to the a grandchild's estate when the trust ended. In this regard, the probate court held if either grandchild died without issue, the benefit would be distributed to the grandchild's estate. Significantly, however, the trust makes no such provision. To the contrary, the trust contemplates that it will continue beyond the lifetime of the grandchildren by at least twenty-one years.
 {¶ 32} In arguing that the trust should be divided into two shares, Appellees rely on the trust's use of the term perstirpes. However, as the Ohio Supreme Court pointed out inKraemer, "a testator leaving a gift to his `heirs at law' has only two alternatives. He may direct that the gift is to be distributed either per stirpes or per capita."168 Ohio St. 221, 229. In the present case, the testatrix simply chose one particular method over another. Choosing a method of allocating gifts is not the same as choosing the timing of the gift. Furthermore, while the definition of "per stirpes" includes the idea of distribution, the testatrix could not have intended distribution to be part of the meaning in this case, because this would contradict other specific terms of the trust. As the Ohio Supreme Court has stressed, "`words contained in the will, if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appear(s) from the context that they were used by the testator in some secondary sense.'" Adair, 54 Ohio St.2d 26, 30. Moreover, "`[a]ll the parts of the will must be construed together, and effect, if possible, given to every word contained in it.'" Id. Construing the trust in the manner Appellees suggest would require us to disregard significant provisions in the trust.
 {¶ 33} The only way the trust can terminate during the lifetime of either grandchild is if trust income is less than $5,000 per year. In that situation, the trust directs the trustee to pay each beneficiary the portion of the trust assets that his share bears to the total trust income. Given the fact situation and the successive nature of the trust interests, the only current beneficiaries are the grandchildren, who would each receive fifty percent of the trust. These facts may have led the trial court to conclude that the grandchild's share should be distributed to his or her estate. However, as we stressed, the trust does not anticipate ending during the grandchildren's lifetime, other than for lack of income.
 {¶ 34} After the death of the last survivor of the daughter and the two grandchildren, the third intent of the trust is to distribute income successively to the living lineal descendants,per stirpes, for another twenty-one years. Again, the trustee has discretion to also distribute income to the living issue of those beneficiaries. At the end of the twenty-one year period, the final intent of the trust is to terminate and pay the principal and accumulated income to the living beneficiaries in the same proportion as the income would have been distributed if the trustee did not have discretion to pay income to the living issue.
 {¶ 35} How this works is best explained by a concrete illustration. For purposes of this explanation, we assume that when the last survivor of the daughter and grandchildren dies, three great-grandchildren exist (A, B, and C), and that two of the three have one child (B1and C1). For the last twenty-one years of the trust, A, B, and C would be the beneficiaries, because (as great-grandchildren) they are next in the successive line of lineal descendants. During that time, A, B, and C would each be entitled to have one-third of the trust assets held and managed for their benefit. However, because of the trustee's discretion, income or principal from the trust could be paid not only to A, B, and C, but also to their living issue, i.e., B1 and C1.
 {¶ 36} If A, B, and C are still alive at the end of the twenty-one year period when the trust ends, and distribution is to be made, they will each receive one-third of the trust principal and accumulated income. B1 and C1are not entitled to receive anything. If A dies before the trust terminates, A's share does not go into A's estate. Instead, A's share is added to the share of B and C, who each now have a half share in the trust proceeds. At the end of the twenty-one year period, B and C each receive half of the trust. Again, B1 and C1 receive nothing. If B dies before the trust ends, his issue, B1, succeeds to his interest, and will receive one-half of the trust principal and accumulated income when the trust terminates. C1 will again receive nothing.
 {¶ 37} This process is consistent with the intent of the trust, which is to provide support to the living descendants of the testatrix, and to disburse the principal and accumulated income to lineal descendants, per stirpes. At no point in the trust can we find an intent that individual shares are to be distributed into the estate of persons dying without issue, so that their share will be withheld from the lineal descendants of the testatrix. Not only would this be inconsistent with the terms of the trust, it is also inconsistent with the use of the word successively. "`If a trust is created for successive beneficiaries, in the absence of circumstances indicating a further purpose, the inference is that the only purpose of the trust is to give the beneficial interest in the trust property to one beneficiary for a designated period and to preserve the principal for the other beneficiary * * *.'" Morgan v. FirstNat. Bank of Cincinnati (1948), 84 Ohio App. 345, 352,84 N.E.2d 612.
 {¶ 38} Accordingly, we do not agree that the trust should be divided into equal shares for the grandchildren, with their share being distributed to their estate if they die without issue. The trust anticipates that it will continue beyond the life of the grandchildren, and that the principal and accumulated income will be divided among the beneficiaries existing at the time of termination. There is no harm in the trustee holding and managing the trust in equal shares, with the income from each share being allocated to a particular line. However, the actual distribution should be made to the living beneficiaries, not to the estate of a deceased beneficiary. As we said, our de novo review indicates that the trust was intended to benefit beneficiaries equally during its existence, and was further intended to pay existing living beneficiaries on termination.
 {¶ 39} Based on the preceding discussion, the assignments of error have merit and are sustained. Accordingly, this case is reversed and remanded to the probate court for further proceedings.
Fain, P.J., and Wolff, J., concur.