OPINION
{¶ 1} This matter comes before us on two consolidated appeals brought by Georgianna Parisi as trustee for the testamentary trust of Jennifer Flynn.
 {¶ 2} In Montgomery App. No. 20700, Parisi appeals from the trial court's decision and entry allowing beneficiary Jennifer Flynn to disclaim any interest in the foregoing trust and ordering the trust terminated with the corpus going to remainderperson Vickie Flynn. In Montgomery App. No. 20699, Parisi appeals from the trial court's subsequent decision and entry ruling on her applications for attorney fees, trustee fees, and costs for her work on the trust. The appellees in both cases are Jennifer Flynn and her mother, Vickie Flynn. In an earlier ruling, we consolidated the two appeals because they involve the same probate case.[1]
 {¶ 3} Parisi advances two assignments of error in the consolidated appeals. First, she contends the trial court erred in ordering the Jennifer Flynn trust terminated. In support, she argues (1) that Jennifer Flynn was too young to disclaim her interest in the trust and (2) that the trial court could not terminate the trust absent a motion from the trustee. Second, she claims the trial court erred in applying a 1955 probate case from Cuyahoga County to assess the reasonableness of her attorney fee request. Parisi insists that Mont. Co. Probate Rule 71.1 obligated the trial court to assess the reasonableness of her attorney fee request under standards found in the Code of Professional Responsibility.
 {¶ 4} Based on the reasoning set forth below, we find that Jennifer Flynn was old enough to disclaim her interest in the trust. We also conclude that the absence of a motion by the trustee did not preclude the trial court from terminating the trust. We do agree, however, that the applicable standards for judging the reasonableness of an attorney fee request are found in the Code of Professional Responsibility. Although the trial court cited a 1955 probate court case from Cuyahoga County, we believe its analysis adequately encompassed the relevant considerations found in the Code of Professional Responsibility. Moreover, we conclude that the trial court's fee award was not an abuse of discretion. As a result, Parisi's assignments of error will be overruled, and the trial court's judgment will be affirmed.
 I. Background {¶ 5} On March 31, 1993, an individual named Benny Jones executed a will that had been drafted by Parisi. Therein, Jones established three testamentary trusts and named Parisi as trustee of each one. Two of the trusts were created to assist his grandchildren, Jennifer Flynn and Nicholas Flynn, with college expenses. Each educational trust was to terminate on the grandchild's twenty-fifth birthday, with any remaining funds to be distributed to Vickie Flynn, who is one of Jones' four daughters and the mother of Jennifer and Nicholas. The third trust was created to provide for Jones' "close friend and companion" Sharon Roe. It is the subject of the related appeal mentioned, supra, in footnote one.
 {¶ 6} Benny Jones died on May 26, 1993. Thereafter, litigation arose when remainderperson Vickie Flynn on several occasions filed exceptions to Parisi's periodic accountings of the trust funds. Vickie Flynn also unsuccessfully moved to have Parisi removed as trustee for incompetence.
 {¶ 7} In June 2003, Jennifer Flynn executed and filed a disclaimer of her interest in the educational trust established for her benefit. Jennifer Flynn was then eighteen years old. In light of the disclaimer, remainderperson Vickie Flynn also moved to have the Jennifer Flynn trust terminated. Parisi opposed the disclaimer, however, arguing that Ohio law precludes individuals younger than twenty-one years of age from disclaiming an interest in a trust. Parisi also argued that the trial court could not terminate the trust without a motion from the trustee requesting the same.
 {¶ 8} To facilitate a possible settlement, on June 14, 2004, Vickie Flynn waived her exceptions to the periodic accountings that Parisi had filed for the three trusts. Two days later, the trial court held a hearing on the disclaimer and termination issue with regard to the Jennifer Flynn trust, as well as on applications for attorney fees, trustee fees, and costs that Parisi had filed for her work on each of the three trusts.
 {¶ 9} In a subsequent August 13, 2004, decision and entry, the trial court read R.C. § 1339.68 as providing for individuals younger than eighteen years of age to disclaim an interest in a trust through a guardian. The trial court also read the statute as requiring an individual to be at least twenty-one years of age to disclaim an interest in a trust on her own. The trial court then determined that the statute made no provision for disclaimers by individuals who were eighteen, nineteen, or twenty years old. The trial court attributed this "gap" to a legislative "oversight" and concluded that it constituted "age discrimination without basis in the law." As a result, the trial court held that Jennifer Flynn could disclaim her interest in the trust, despite its belief that the statute did not authorize such action. The trial court then turned to R.C. § 2109.62, which provides for the termination of a trust upon a motion by the trustee and the satisfaction of certain conditions. Although it acknowledged that the trustee had not moved to have the Jennifer Flynn trust terminated, the trial court found all of the other conditions satisfied. The trial court then construed Parisi's purported "acquiescence" to Vickie Flynn's motion to terminate the trust as being tantamount to a motion by the trustee herself. As a result, the trial court ordered the Jennifer Flynn trust terminated and the trust corpus distributed to remainderperson Vickie Flynn.
 {¶ 10} On the issue of attorney fees, trustee fees, and costs in connection with the Jennifer Flynn trust, Parisi requested "attorney/trustee fees" totaling $14,805.00 and costs of $2,707.44. In an August 20, 2004, decision and entry, however, the trial court awarded her attorney fees of $2,800, trustee fees of $2,494.83, and costs of $186.68.[2] The trial court also noted that Parisi previously had received an additional $980.36 for "costs and fees." In support of its decision, the trial court relied on standards contained in In re Estate of Haggerty
(1955), 70 Ohio Law Abs. 463, 128 N.E.2d 680, a Cuyahoga County probate court case, to assess the reasonableness of Parisi's "attorney/trustee fee" request. This timely appeal followed.
 II. Analysis {¶ 11} In her first assignment of error, Parisi contends the trial court erred in ordering the Jennifer Flynn trust terminated. In support, she argues (1) that Jennifer Flynn was too young to disclaim her interest in the trust and (2) that the trial court could not terminate the trust absent a motion from the trustee.
 {¶ 12} On the former issue, Parisi insists that R.C. §1339.68 requires a beneficiary to be twenty-one years of age to disclaim an interest in a trust. We disagree. The statute defines a "disclaimant" as including "any person" who is a beneficiary under a testamentary instrument or who is entitled to take an interest in real or personal property upon the death of another. R.C. § 1339.68(A)(1)(a) and (A)(1)(d); R.C. § 1339.68(A)(2). The statute then provides that a disclaimant may disclaim "the succession to any property" by executing and by delivering, filing, or recording a written disclaimer instrument. R.C. §1339.68(B)(1). Finally, the portion of the statute upon which Parisi relies states that the disclaimant shall deliver, file, or record the disclaimer "not later than nine months after the latest of" three potential dates. One of those dates is "[t]he date on which the disclaimant attains twenty-one years of age[.]." R.C. § 1339.68(D)(3).
 {¶ 13} Contrary to Parisi's argument on appeal, the foregoing language does not require a disclaimant to be at least twenty-one years of age. The statute provides that "any person" who is a beneficiary under a testamentary instrument may disclaim her interest in property. Section 1339.68(D)(3) merely recognizes a date three months after a person's twenty-first birthday as one of three potential deadlines for exercising the right to disclaim an interest in property. In the present case, Jennifer Flynn disclaimed her interest in the trust when she was eighteen years old, which was well within the deadline established by R.C. §1339.68(D)(3). As a result, Jennifer Flynn properly exercised her right to disclaim her interest in the trust, and we find no merit in Parisi's first argument.
 {¶ 14} As for Parisi's argument that the trial court lacked authority to terminate the trust following the disclaimer, we are equally unpersuaded. In support of her claim that she was required to file a motion for termination before the trial court could end the trust, Parisi relies on R.C. § 2109.62, which provides:
 {¶ 15} "(A)(1) Upon the filing of a motion by a trustee with the court that has jurisdiction over the trust, upon the provision of reasonable notice to all beneficiaries who are known and in being and who have vested or contingent interests in the trust, and after holding a hearing, the court may terminate the trust, in whole or in part, if it determines that all of the following apply:
 {¶ 16} "(a) It is no longer economically feasible to continue the trust;
 {¶ 17} "(b) The termination of the trust is for the benefit of the beneficiaries;
 {¶ 18} "(c) The termination of the trust is equitable and practical;
 {¶ 19} "(d) The current value of the trust is less than one hundred thousand dollars."
 {¶ 20} While the foregoing termination procedure is triggered by a trustee's motion to terminate a trust, resort to R.C. §2109.62 was not required in this case. Once Jennifer Flynn disclaimed her interest in the trust, it was subject to termination under the doctrine of acceleration of remainders. This doctrine, which long has been the law in Ohio, "refers to the hastening of the owner of a future interest towards a status of present possession or enjoyment by reason of the failure of the preceding [interest]. The doctrine of acceleration is generally used when the temporary interest, preceding the remainder, fails to come into existence, or as in the case sub judice, coming into existence, terminates in some manner for which the testator did not provide." Ohio Nat'l Bank of Columbusv. Adair (1978), 54 Ohio St.2d 26, 28. The rationale for the rule is that acceleration is in accordance with the assumed intent of the testator, "namely that as each successive interest sought to be created by him ends or becomes impossible, the next interest in order should move up." Id. at 29.
 {¶ 21} In the context of disclaimers by beneficiaries under testamentary instruments such as the trust at issue herein, the acceleration-of-remainders principle has been codified in R.C. §1339.68(G), which provides:
 {¶ 22} "(G) Unless the donative instrument expressly provides that, if there is a disclaimer, there shall not be any acceleration of remainders or other interests, the property, part of property, or interest in property disclaimed, and any future interest that is to take effect in possession or enjoyment at or after the termination of the interest disclaimed, shall descend, be distributed, or otherwise be disposed of, and shall be accelerated, in the following manner:
 {¶ 23} "(1) If intestate or testate succession is disclaimed, as if the disclaimant had predeceased the decedent."
 {¶ 24} Although the trial court terminated the Jennifer Flynn trust under R.C. § 2109.62 and awarded the remainder to Vickie Flynn, the same result is obtained if Vickie Flynn's interest in the remainder is accelerated as required by R.C. § 1339.68(G). This is so because Benny Jones' will and trust did not prohibit acceleration of the remainder following Jennifer Flynn's disclaimer. Therefore, for purposes of determining who should take possession of the corpus, R.C. § 1339.68(G)(1) instructs that Jennifer Flynn must be treated as if she had predeceased Jones. In such a case, the money that Jones had earmarked in his will for the education of his grandchildren would have gone into one trust for the benefit of Nicholas Flynn rather than being divided in half and placed into two separate trusts for the benefit of Jennifer and Nicholas Flynn. See Item XI of Benny Jones' Last Will and Testament ("At the time of my death, the Co-Trustee shall divide one-fourth (1/4) of the share bequeathed to my daughter, Vickie Flynn, into as many Trusts as she has living children, per stirpes.").
 {¶ 25} Notably, Vickie Flynn is the sole remainderperson under the Nicholas Flynn trust, which previously terminated by its own terms on his twenty-fifth birthday. Therefore, Vickie Flynn is entitled to the corpus of the disclaimed Jennifer Flynn trust "free and clear of any claim of any and all other heirs, absolute[ly] freed and discharged of any and all [t]rusts[.]" Id. It is well settled that a reviewing court will not reverse a correct judgment simply because it was based on faulty analysis.Joyce v. General Motors Corp. (1990), 49 Ohio St.3d 93, 96. Accordingly, we overrule Parisi's first assignment of error.
 {¶ 26} In her second assignment of error, Parisi contends the trial court erred in applying a 1955 probate case from Cuyahoga County to assess the reasonableness of her attorney fee request. She insists that Mont. Co. Probate Rule 71.1 obligated the trial court to assess the reasonableness of her attorney fee request under standards found in the Code of Professional Responsibility.
 {¶ 27} Upon review, we do not dispute Parisi's reading of Mont. Co. Probate Rule 71.1, which provides:
 {¶ 28} "Attorney fees in all matters shall be governed by DR 2-106 of the Code of Professional Responsibility. All attorney fees must be reasonable, and the services rendered must be necessary to the administration of the case. * * *"
 {¶ 29} In turn, DR 2-106(A) states that an attorney shall not charge or collect a "clearly excessive fee," which is defined as being "in excess of a reasonable fee." Under DR 2-106(B), factors to be considered as guides in assessing the reasonableness of a fee include:
 {¶ 30} "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
 {¶ 31} "(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
 {¶ 32} "(3) The fee customarily charged in the locality for similar legal services.
 {¶ 33} "(4) The amount involved and the results obtained.
 {¶ 34} "(5) The time limitations imposed by the client or by the circumstances.
 {¶ 35} "(6) The nature and length of the professional relationship with the client.
 {¶ 36} "(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
 {¶ 37} "(8) Whether the fee is fixed or contingent."
 {¶ 38} Rather than reviewing the foregoing factors to assess the reasonableness of Parisi's fees in the present case, the trial court relied on considerations found in In re Estate ofHaggerty (1955), 70 Ohio Law Abs. 463, 128 N.E.2d 680, a Cuyahoga County probate court case. In so doing, the trial court stated that "[t]he term `reasonable' means what is fair in view of the size of the estate, the responsibilities involved, the character of the work required, the special problems and difficulties met in doing the work, the results achieved, the knowledge, skill, and judgment and the time and service required, and any other circumstances which may be relevant and material to the determination."
 {¶ 39} Although Parisi argues that the trial court's reliance on the test found in Haggerty constitutes reversible error, we do not agree. Despite the fact that it cited a 1955 probate court case from Cuyahoga County, the trial court's analysis
adequately encompassed the relevant considerations found in Mont. Co. Probate Rule 71.1 and DR 2-106. A review of the trial court's decision and entry reveals that it took into account the considerations set forth in DR 2-106(B)(1), (3), (4), and (8) even though it did not refer to the disciplinary rule itself. As for DR 2-106(B)(2), we are unaware of any evidence that Parisi's work on the Jennifer Flynn trust precluded other legal employment. Likewise, we find no particular relevance in DR 2-106(B)(5) as the record does not reveal any extraordinary time limitations. Similarly, DR 2-106(B)(6) has little applicability given that Parisi, the attorney, had Parisi, the trustee, for a client. Finally, we note that the trial court did not expressly address "[t]he experience, reputation, and ability of the lawyer or lawyers performing the services," which is a relevant consideration under DR 2-106(B)(7). The record reveals, however, that the trial court was aware of both Parisi's recent certification in this area of the law and her lack of trust administration experience. Thus, we conclude that the trial court sufficiently considered the relevant factors despite its failure to cite Mont. Co. Probate Rule 71.1 or DR 2-106.
 {¶ 40} In opposition to the foregoing reasoning, Parisi argues that the trial court erred in considering the size of the Jennifer Flynn trust in relation to the amount of fees requested. Parisi insists that DR 2-106 does not allow a trial court to consider the amount of a fee request in relation to the size of a trust when determining whether a fee request is reasonable. We disagree. Under DR 2-106(B)(1) and (B)(4), a trial court may consider both "the time and labor required" (i.e., the amount of a fee request) and "the amount involved" (i.e., the size of the trust). As a result, we see no error in the trial court's assertion that the term "reasonable" includes consideration of "what is fair in view of the size of the estate[.]"
 {¶ 41} The bottom line is that the trial court believed Parisi performed too much work on a small trust and engaged in excessive litigation, possibly due in part to animosity between Parisi and Vickie Flynn.[3] The trial court also found that Parisi spent too much time performing relatively simple tasks, did a sizeable amount of work that was of little or no value to the beneficiaries, and on many occasions billed the Jennifer Flynn trust, the Nicholas Flynn and/or Sharon Roe trusts separately for essentially the same legal work.[4] Having reviewed the record, we cannot say that the trial court abused its discretion in reaching these conclusions and in making the fee award that it did. Zimmerman v. U.S. Diamond GoldJewelers, Inc. (March 8, 1995), Montgomery App. No. 14680 (applying an abuse-of-discretion standard to a trial court's attorney fee award based on the factors set forth in DR 2-106);National City Bank, Dayton v. Peery (Nov. 8, 1995), Montgomery App. No. 15117 ("Where the services of an attorney have been employed by a trustee in the course of administering a trust estate, an allowance of reasonable attorney fees as part of the costs and expenses of administration is a matter within the sound discretion of the probate court. Absent an abuse of that discretion, a reviewing court will not interfere with the probate court's decision.").
 {¶ 42} In finding no abuse of discretion in the trial court's fee award, we note too that Parisi has failed to segregate her trustee fees from her attorney fees in her time records and fee applications. Although she asserts that "it is not customary in this locality to do so," such segregation is mandated by Mont. Co. Probate Rule 71.1(E), which provides: "In cases where the attorney is also the guardian or trustee, the attorney shall set forth the time expended as both the guardian and attorney, and the application shall be evaluated for the reasonableness of both fees." Parisi's failure to follow the mandate of Mont. Co. Probate Rule 71.1(E) makes it extremely difficult for this court to evaluate the reasonableness of the trial court's fee award. It appears to us that a sizeable amount of the work for which she billed attorney fees would fall within the scope of tasks typically performed by a trustee. While Parisi offered to waive her trustee fees to ameliorate any problem, such a remedy is inadequate. Even if Parisi waived her trustee fees, the fact remains that she appears to have billed some trustee work as attorney work. This is significant because her hourly attorney-fee rate is substantially higher than the fees available to a trustee for the administration of a small trust. The record reflects that Parisi billed at rates of $125 to $200 per hour for her attorney fees. To the extent that this billing included work more properly characterized as trustee work, Parisi's bill is excessive. Given her failure to segregate the fifty-two pages of billing records in this case, as required by Mont. Co. Probate Rule 71.1, this court cannot readily determine the extent of the excessiveness. In any event, it is the responsibility of Parisi, and not this court or the trial court, to segregate her attorney work and her trustee work. For this additional reason, we cannot say that the trial court abused its discretion in awarding her the fees that it did. Parisi's second assignment of error is overruled.
 III. Conclusion {¶ 43} Having overruled Parisi's two assignments of error, we hereby affirm the judgment of the Montgomery County Court of Common Pleas, Probate Division.
Judgment affirmed.
Wolff J., and Grady, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
[1] We declined, however, to consolidate a third related appeal, In re the Testamentary Trust of Sharon Roe, Montgomery App. No. 20719, because it arose out of a different probate case. As a result, the issues raised in Roe will be resolved in a separate decision and entry.
[2] Parenthetically, we note that with regard to the trust for the benefit of Sharon Roe, Parisi requested $70,685 for "attorney/trustee fees" and $8,205.90 for costs. In response, the trial court awarded her attorney fees of $8,400, trustee fees of $11,801.21, and costs of $3,351.40. The trial court also noted that Parisi previously had received an additional $4,994.21 for "costs and fees" in connection with the Roe trust.
[3] Parisi contends that her litigation efforts were primarily defensive in nature and were precipitated by meritless motions filed by remainderperson Vickie Flynn. We note, however, that Parisi also filed her own unsuccessful motions and vigorously opposed Jennifer Flynn's effort to exercise her right to disclaim her interest in the trust as well as Vickie Flynn's effort, as remainderperson, to obtain the trust funds to which she was entitled after the disclaimer.
[4] By way of example, the trial court noted that Parisi had billed the Jennifer Flynn and Nicholas Flynn trusts fifteen minutes each for the same telephone conference with the probate court "regarding when accounts for the trust will be done." Likewise, the trial court noted that Parisi had billed the Jennifer and Nicholas Flynn trusts fifteen minutes each for the preparation of nearly identical cover letters and short applications for extensions of time to file an inventory. In addition, the trial court observed that Parisi then had billed the Sharon Roe trust thirty minutes for preparation of virtually the same cover letter and application. The result is a combined bill of $125 for legal work that appears to have been minimal. The trial court next pointed out that Parisi had billed each of the three trusts fifteen minutes for faxing an "EIN application" to the IRS on March 3, 1998, resulting in a combined bill of $93.75 for that simple act. Finally, the trial court noted that Parisi then had billed the Jennifer Flynn and Sharon Roe trusts fifteen minutes each for receiving a message from the IRS and for two unsuccessful attempts to place a telephone call, resulting in a combined bill of $62.50 for this activity. Our review persuades us that these examples are merely illustrative and far from exhaustive.